[No. B228373. Second Dist., Div. Seven. June 14, 2011.]

In re R.C. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Appellant, v.
EDWIN H. et al., Defendants and Respondents.

**COUNSEL**

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Appellant.

Anna L. Ollinger, under appointment by the Court of Appeal, for Defendant and Respondent Edwin H.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Respondents R.C. and Jonathan H.

## OPINION

**PERLUSS, P. J.**—A 32-year-old man who claims to be in love with a 12-year-old child living in his household engages in tongue-to-tongue or French kissing with her on at least three occasions. Is it a permissible inference that this behavior, although inappropriate, was not sexual in nature or is the only reasonable inference under these circumstances that the man kissed the child "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of himself or her within the meaning of Penal Code section 288? Contrary to the juvenile court's implied finding, French kissing between an adult and a 12-year-old child who describe themselves as "in love" is inherently sexual. Accordingly, we reverse the juvenile court's order dismissing allegations of sexual abuse in a dependency petition pursuant to Welfare and Institutions Code section 300, subdivision (d)[1] and direct the court on remand to reconsider requiring the offending adult to participate in a sexual abuse program for perpetrators rather than a sexual abuse awareness program.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties*

Reyna F. is the mother of two daughters, 13-year-old R.C. and 12-year-old D.C., and an eight-year-old son, Jonathan H. Reyna is now only 28 years old. Eduardo C., the father of R.C. and D.C., lives in Guatemala. Edwin H., 32 years old, is the father of Jonathan and lives with Reyna and all of her children.

### 2. *The Sexual Abuse Allegations*

On July 22, 2010 Reyna called the Los Angeles Police Department and reported that Edwin had been sexually abusing D.C. According to the police report, D.C. had told Reyna two weeks earlier "she had a relationship with [Edwin] and wanted her mother to take everyone and leave the house." Reyna did not believe D.C. and disregarded the information. On July 20, 2010, however, Edwin attempted suicide by ingesting an excessive dose of diabetes medication and alcohol. While intoxicated Edwin told Reyna he had a relationship with D.C. and they had kissed, "but had not been involved in any

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

sexual activity." About the same time R.C. told Reyna that D.C. had said she and Edwin were involved in a romantic relationship.

When interviewed by detectives, D.C. confirmed "she was involved in a romantic relationship with [Edwin] but [they] had only kissed each other. [D.C.] also stated that they kissed three times and each time they kissed romantically utilizing the tongue and [Edwin] told her he loved her. On one of the occasions [Edwin] grabbed her by the waist during the kiss." D.C. also told detectives Reyna had threatened to kill her and Edwin and D.C. had tried to kill herself the previous day by ingesting 50 pills because Reyna would not let her see Edwin. D.C. was taken to a psychiatric hospital to be assessed for suicidal ideation, and the children were taken into protective custody.

### 3. *The Dependency Petition*

The Los Angeles County Department of Children and Family Services (Department) filed a juvenile dependency petition on July 28, 2010 on behalf of R.C., D.C. and Jonathan alleging Edwin had sexually abused D.C. on numerous prior occasions and Reyna had failed to take action to protect the child when she knew or reasonably should have known of the sexual abuse: "Such sexual abuse consisted of [Edwin] forcefully kissing the child's mouth including sticking his tongue into the child's mouth. [Edwin] inappropriately hugged the child and touched the child's waist." Edwin's conduct and Reyna's failure to respond properly to it, the petition further alleged, placed D.C. and her siblings at risk of physical and emotional harm within the meaning of section 300, subdivision (b) (failure to protect) and constituted sexual abuse within the meaning of section 300, subdivision (d).[2] The petition also alleged Edwin has mental and emotional problems, including suicidal ideation, and a history of alcohol abuse and is a current abuser of alcohol, all of which render him unable to provide regular care for Jonathan (§ 300, subd. (b)).[3]

In its report for the detention hearing the Department summarized several additional interviews with D.C. D.C. described her relationship with Edwin and the circumstances leading to her and her siblings' detention in terms that were largely consistent with her initial report to detectives, but she also explained she had "wanted to kill herself because she is very much in love" with Edwin and Reyna was "trying to separate them by taking [D.C.] to

---

[2] The petition also alleged this conduct created a substantial risk of abuse or neglect to a sibling within the meaning of section 300, subdivision (j).

[3] The Department alleged that R.C. and D.C.'s father, Eduardo, had failed to provide them with the necessities of life and that his whereabouts were unknown. (§ 300, subds. (b), (g).)

Guatemala to live there."[4] A report from D.C.'s forensic medical examination, attached to the detention report, quoted D.C.'s description of tongue kissing Edwin as "kiss[ing] him like my boyfriend." D.C. also said Edwin "told her that he is in love with her" and "will wait until she is 18 years old to be with her."

Reyna's statement to the social worker differed from the one she had given several days earlier to police officers. Reyna now claimed D.C. had "never told her about any sexual abuse" and asserted it was D.C.'s "fault and not [Edwin's] for [Department] intervention." Nonetheless, Reyna also told the social worker "that on several occasions [Edwin and D.C.] asked Reyna to leave them alone for 30 minutes." Reyna said she had refused to do so. The Department was unable to contact Edwin for an interview.

At the detention hearing the court found a prima facie case had been established that all three children came within section 300, subdivisions (b) and (d)[5] and there was a substantial danger to their physical or emotional health if not removed from Reyna and Edwin's home. The court ordered the children detained in shelter care with discretion granted to the Department to release them to any appropriate relative. Reyna was allowed monitored visits with the children; Edwin, who had not appeared at the hearing, was allowed monitored visits only with Jonathan.

### 4. *The Pretrial Resolution Conference*

By the September 7, 2010 pretrial resolution conference (PRC) D.C. had recanted much of what she had reported to the police. According to the Department's PRC report, D.C. now claimed, " 'All I can tell you is that everything is a lie. Also, I took the pills because I wanted to teach my mom a lesson. Sometimes I feel she loves Edwin more than what she loves me and my sister. So I wanted her to suffer. I didn't take enough pills to kill me. I'm not stupid. I used to think that it was Edwin's fault why my mom and my dad were not together. . . . When I was in Guatemala I also used to tell my dad's wife things about my stepmother because I wanted them to be apart. . . . One time my dad's wife left because I told her that my dad was having an affair, but my dad went and convinced her that it was a lie and they got back together.' "

The Department also reported R.C. accused D.C. of lying about her relationship with Edwin, corroborating D.C.'s claim she had engaged in

---

[4] D.C. said her mother had taken her and her siblings to the Guatemalan consulate on July 21, 2010 to obtain passports for them.

[5] The court also found a prima facie case for detaining R.C. and D.C. under section 300, subdivision (g) and R.C. and Jonathan under section 300, subdivision (j).

similar deceit in the past: " 'My sister is very sick in her mind. Sometimes she likes to make up stories to get attention. She did the same thing when we were living in Guatemala. . . . My sister believed it was Edwin's fault why my mom and my dad were not together. That's the reason she made up this story. She wants to separate them . . . .' " Reyna, reiterating what she had earlier told the Department, also stated, " '[D.C.] never told me that Edwin sexually abused her.' "

With respect to Edwin's attempted suicide, the three children essentially proffered the same explanation that Edwin was upset because their mother had threatened to take Jonathan to Guatemala and Edwin believed he would never see him again. Reyna explained she had gone to the consulate the day of the attempted suicide to find out how she could visit another son in Guatemala, who is very sick, and return to the United States. The Department reported Edwin had refused to be interviewed.[6]

At the PRC the court was advised the matter needed to be set for trial. A contested jurisdiction and disposition hearing was scheduled for October 19, 2010.

### 5. *The Contested Jurisdiction and Disposition Hearing*

Notwithstanding that D.C. had recanted her statements describing her relationship with Edwin and Reyna now denied having been informed of it, counsel for the children, Reyna and Edwin all agreed that they did not dispute the factual allegations in the Department's petition and that the only question to be resolved at the jurisdiction hearing was whether those facts justified a finding of dependency under both section 300, subdivisions (b) and (d), the position advocated by the Department, or only section 300, subdivision (b), as argued by Edwin, Reyna and the children.

Although characterizing Edwin's tongue kissing of D.C. as "completely inappropriate behavior," counsel for D.C. argued it was not a sexual assault within section 300, subdivision (d): "The child in describing the conduct time and again does not refer to sex. She thinks she's in love, and it's more the kind of hearts and flowers, kissing, that he wants to be with me forever, carving his initials on a notebook . . . complete fantasy on this child's part. And nowhere does she describe any intimate touching with any part of her body that is mentioned in the most relevant statute, which is Penal Code 11165.1." For his part, Edwin's counsel argued the conduct was not lewd or

---

[6] A parent in a dependency proceeding has a right under the California and federal Constitutions to refuse to speak with Department investigators. (See, e.g., *In re Mark A.* (2007) 156 Cal.App.4th 1124, 1133–1134 [68 Cal.Rptr.3d 106].)

lascivious because the Department had not "stated in the report that any of the[] acts were for sexual gratification or for sexual pleasure."

The juvenile court sustained the petition, but disagreed with the Department's position. It dismissed the section 300, subdivision (d) count and amended the petition language to replace all references to sexual assault in the initial section 300, subdivision (b) count with the term "inappropriate physical contact." The court explained, "[T]he behavior is completely inappropriate. While I don't find it rises to the level of a (d), it clearly crosses the boundaries that should occur between adults and children." The court also sustained the section 300, subdivision (b), counts relating to Edwin's mental and emotional problems and ongoing alcohol abuse, as well as the counts involving R.C. and D.C.'s father, Eduardo.

At the disposition hearing, which immediately followed the jurisdiction hearing, the court declared D.C., R.C. and Jonathan dependent children of the court under section 300, subdivisions (b), (g) and (j), removed them from Reyna and Edwin's custody and ordered them suitably placed. The court directed the Department to provide family reunification services for Reyna and Edwin and ordered, among other things, Reyna and Edwin to complete parent education and to participate in individual counseling to address case issues, including "sexual abuse boundary issues" for Reyna. The court also ordered Edwin to attend a sexual abuse awareness program rather than a sexual abuse program for perpetrators as recommended by the Department.

## DISCUSSION

### 1. *Standard of Review*

Ordinarily we review the juvenile court's jurisdiction findings for substantial evidence. (*In re David M.* (2005) 134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411]; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654 [54 Cal.Rptr.2d 722].) However, the proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *Scottish Rite Cathedral Assn. of Los Angeles v. City of Los Angeles* (2007) 156 Cal.App.4th 108, 115 [67 Cal.Rptr.3d 207]; *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].)

### 2. *Statutes Defining Sexual Abuse for the Purpose of Juvenile Dependency Court Jurisdiction*

Section 300, subdivision (d), provides that a child comes within the jurisdiction of the dependency court when "[t]he child has been sexually

abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household . . . ." Penal Code section 11165.1, in turn, defines "sexual abuse" to include any act that violates Penal Code section 288 (lewd or lascivious acts upon a child under the age of 14) or Penal Code section 647.6 (annoying or molesting a child).[7]

■ Penal Code section 288 "prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act." (*People v. Martinez* (1995) 11 Cal.4th 434, 444 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*).)[8] Thus, any touching of a child under the age of 14 is a felony offense "even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim." (*People v. Lopez* (1998) 19 Cal.4th 282, 289 [79 Cal.Rptr.2d 195, 965 P.2d 713]; accord, *People v. Panah* (2005) 35 Cal.4th 395, 488 [25 Cal.Rptr.3d 672, 107 P.3d 790] [Pen. Code, § 288 " 'is violated by "any touching" of an underage child committed with the intent to sexually arouse either the defendant or the child' "]; see *Martinez*, at p. 444 ["a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body"].) "[W]illingness by the child is not a defense . . . . For over 100 years, California law has consistently provided that children under age 14 cannot give valid legal

---

[7] Penal Code section 11165.1 provides, in part, "As used in this article, 'sexual abuse' means sexual assault or sexual exploitation as defined by the following: [¶] (a) 'Sexual assault' means conduct in violation of one or more of the following sections: Section 261 (rape), subdivision (d) of Section 261.5 (statutory rape), 264.1 (rape in concert), 285 (incest), 286 (sodomy), subdivision (a) or (b), or paragraph (1) of subdivision (c) of Section 288 (lewd or lascivious acts upon a child), 288a (oral copulation), 289 (sexual penetration), or 647.6 (child molestation). [¶] (b) Conduct described as 'sexual assault' includes, but is not limited to, all of the following: [¶] (1) Any penetration, however slight, of the vagina or anal opening of one person by the penis of another person, whether or not there is the emission of semen. [¶] (2) Any sexual contact between the genitals or anal opening of one person and the mouth or tongue of another person. [¶] (3) Any intrusion by one person into the genitals or anal opening of another person, including the use of any object for this purpose, except that, it does not include acts performed for a valid medical purpose. [¶] (4) The intentional touching of the genitals or intimate parts (including the breasts, genital area, groin, inner thighs, and buttocks) or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that, it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose. [¶] (5) The intentional masturbation of the perpetrator's genitals in the presence of a child. . . ."

[8] Penal Code section 288, subdivision (a), provides, "[A]ny person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

consent to sexual acts with adults." (*People v. Soto* (2011) 51 Cal.4th 229, 238 [119 Cal.Rptr.3d 775, 245 P.3d 410].)

To determine whether a defendant acted with sexual intent, all the circumstances are examined. Relevant factors include the nature and manner of the touching, the defendant's extrajudicial statements, the relationship of the parties and "any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection." (*Martinez, supra,* 11 Cal.4th at p. 445.) The requisite intent "must be inferred from all the circumstances . . . . A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute. On the other hand, if the trier of fact *is* persuaded beyond a reasonable doubt, from all the circumstances, that the touching of a child *was* sexually motivated, nothing in the language, history, or purpose of section 288 indicates that the touching should escape punishment simply because it might not be considered a means of sexual gratification by members of the mainstream population." (*Id.* at p. 452.)

Penal Code section 647.6, subdivision (a)(1), makes it a misdemeanor to "annoy[] or molest[] any child under 18 years of age." No touching is required, but the statute requires conduct that would unhesitatingly irritate a normal person, and " 'conduct " 'motivated by an unnatural or abnormal sexual interest' " in the victim [citations].' " (*In re Karen R.* (2001) 95 Cal.App.4th 84, 89–90 [115 Cal.Rptr.2d 18]; see *People v. Shaw* (2009) 177 Cal.App.4th 92, 103 [99 Cal.Rptr.3d 112] ["there can be no *normal* sexual interest in any child and it is the interest in the child that is the focus of the statute's intent"].)

3. *The Juvenile Court Erred in Concluding Edwin's Conduct Was Not Sexual Abuse*

In accepting the truth of the facts as alleged by the Department at the jurisdiction hearing, the parties effectively stipulated to all the circumstances that need be examined to determine whether Edwin tongue kissed D.C. with the sexual intent required under Penal Code section 288 or 647.6 to constitute "sexual abuse" within the meaning of Welfare and Institutions Code section 300, subdivision (d). The manner of the touching itself—the intentional French kissing of a child under 14 by an adult—and the absence of any conceivable innocent explanation are dispositive.

Unlike kissing without the use of tongues, which is an important means of demonstrating parental love and affection for a child, there can be

no innocent or lovingly affectionate tongue kissing of a child by an adult. As described by a popular reference work, "Kissing is a kind of touch that has as much range as a big-city orchestra. It can be a perfunctory peck on the cheek, so asexual that balding Communist Party apparatchiks aren't ashamed to do it on TV, or it can be so explosively erotic it's about as close to intercourse as you can get. French kissing (what's sometimes called 'soul kissing'), in which one's tongue deeply penetrates a lover's mouth, is an almost perfect mimic of intercourse itself." (Bechtel, The Practical Encyclopedia of Sex and Health (1993) pp. 182–183; see Bullough & Bullough, Human Sexuality: An Encyclopedia (1994) p. 218 ["[s]ome people believe that an open-mouthed kiss, or a French Kiss, is more intimate than sexual intercourse"].)[9]

Although there is no reported California case directly on point, other state courts have reached the same conclusion we do. For example, in *People v. Calusinski* (2000) 314 Ill.App.3d 955, 962 [247 Ill.Dec. 956, 733 N.E.2d 420] the defendant argued French kissing a six-year-old girl was not an "act of sexual conduct" because "there was no evidence presented that [he] kissed the victim for the purposes of his sexual arousal." (*Id.*, 733 N.E.2d at p. 425.) Rejecting the argument, the court stated, "Despite the defendant's assertions, we cannot ascribe an innocent motive to such conduct. As noted by the trial court, a 'french kiss' is an inherently sexual act which generally results in sexual excitement and arousal." (*Ibid.*; accord, *Crispino v. State* (2010) 417 Md. 31, 45 [7 A.3d 1092] ["French kissing is, in itself, an intimate act that has a sexually exploitive effect."]; *Altman v. State* (Fla.Dist.Ct.App. 2003) 852 So.2d 870, 875–876 ["an ordinary person of common intelligence would understand that tongue-kissing a minor child is sexual contact . . ."]; see also *State v. Stout* (2005) 34 Kan.App.2d 83, 87 [114 P.3d 989] [describing as persuasive case law "from other jurisdictions which have recognized that a french kiss is an inherently sexual act generally resulting in sexual excitement and arousal"].)

■ Edwin contends the evidence demonstrates he did not have the requisite intent of seeking *immediate* sexual gratification because he and D.C. believed they had a "romantic love," and Edwin was willing to delay

---

[9] In Sexual Behavior in the Human Female, "Deep Kissing," "also known as soul kissing, tongue kissing, or French kissing" is described: "Because of the abundant nerve supply in the lips, the tongue, and the interior of the mouth, the stimulation of these areas may be very effective, and orgasm occasionally results from such deep kissing, even though no genital contact is involved." (Kinsey et al., Sexual Behavior in the Human Female (1998) p. 252.)

Similarly, the Kinsey Institute New Report on Sex states, "The mouth, lips, and tongue are among the several highly *erogenous* (sexually sensitive, capable of arousing sexual desire) areas of the body. French kissing often accompanies a change in a couple's relationship from friendship to a more emotional, intimate involvement. Couples usually kiss this way as the relationship progresses to a more advanced stage, or in an established partnership signaling existing sexual arousal or the wish to stimulate sexual arousal in the partner." (Reinisch & Beasley, The Kinsey Institute New Report on Sex (1991) p. 103.)

gratification by "waiting for her" until she was 18 years old. (See *Martinez, supra*, 11 Cal.4th at p. 452 ["[i]n all cases arising under [Penal Code section 288], the People are required to prove that the defendant touched the child in order to obtain immediate sexual gratification"]; *id.* at p. 444 ["sexual gratification must be presently intended at the time such 'touching' occurs"].) Even if Edwin sincerely, but naively or foolishly, believed his love for D.C. was somehow innocent and pure and not abusive, the moment he placed his tongue in her mouth his conduct became inherently sexual; and there was no delayed sexual gratification. (See *id.* at p. 444 ["[Penal Code section 288] also assumes that young victims suffer profound harm whenever they are. perceived and used as objects of sexual desire. [Citation.] It seems clear that such concerns cannot be satisfied unless the kinds of sexual misconduct that result in criminal liability are greatly expanded where children are concerned."].) Sexual gratification is not limited to sexual climax nor is it achieved solely by intercourse. (Cf. § 361.5, subd. (b)(6) [defining "severe sexual abuse"].)[10]

### 4. The Court on Remand Must Reconsider Reunification Services for Edwin

Our conclusion the juvenile court erred in dismissing the § 300, subd. (d), count based on Edwin's conduct toward D.C. requires, on remand, reconsideration of the reunification services ordered for him. In particular, rather than participating in a sexual abuse awareness program, as the court initially ordered, it seems more appropriate to require Edwin to complete a sexual abuse program for perpetrators. However, we leave to the juvenile court in the first instance to determine, based on the parties' current circumstances, what modifications, if any, should be made in its disposition orders.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition order are reversed to the extent the court dismissed count d-1 (§ 300, subd. (d)) in its entirety and modified count b-1 (§ 300, subd. (b)) by striking "sexually abused" and inserting in its place "engaged in inappropriate physical contact" and striking "sexual abuse" and inserting in its place "inappropriate contact." The court is

---

[10] Even were we to agree with the juvenile court's conclusion Edwin's conduct, while completely inappropriate, nonetheless fell just short of sexual abuse, reversal of the order dismissing the section 300, subdivision (d), count would still be required. Section 300, subdivision (d), provides for dependency jurisdiction not only when a child has been sexually abused, but also when "there is a substantial risk that the child will be sexually abused . . . ." Plainly, given the conduct that was admittedly occurring, in the absence of official intervention there was a substantial risk that Edwin would engage in increasingly amorous behavior with D.C.

directed on remand to sustain count d-1 as originally pleaded as to D.C. only and count b-1 as originally pleaded as to all three children with the exception in both counts of the sentences regarding Reyna's threat to kill Edwin and D.C., to reconsider the nature of the sexual abuse program that Edwin must complete and to conduct further proceedings not inconsistent with this opinion.

Zelon, J., and Jackson, J., concurred.