Filed 8/24/21  In re D.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re D.C., a Person Coming Under the Juvenile Court Law. | B309256 (Los Angeles County Super. Ct. No. 20CCJP01940B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. E.C., Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Sabina A. Helton, Judge.  Affirmed.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Appellant.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Respondent.

—————————————

E.C. (father) molested his then 12-year-old daughter, G.C. (daughter), while in the same room with his then six-year-old son, D.C. (son).  The juvenile court dismissed a petition filed pursuant to Welfare and Institutions Code section 300, subdivisions (b), (d) and (j)[1] on behalf of son after concluding that he was differently situated than daughter and not at risk of sexual abuse or serious physical harm.  The Los Angeles County Department of Children and Family Services (Department) appeals the dismissal.

We find no error and affirm.

## FACTS

Father and S.B. (mother) operated a daycare center at their home and the family used their living room as a shared bedroom. While mother and son slept in a queen size bed together, father and daughter had their own beds.  The children's adult half-

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

brother, I.G., lived in a bedroom on the second floor. Mother had security cameras set up throughout the entire house because of her daycare business.

Son has cerebral palsy and is developmentally delayed and somewhat verbal. He has a shunt from his brain to his stomach. He received occupational therapy, speech therapy, and physical education through his local school, and he received other services from a variety of agencies and entities. Father took the children to school and medical and dental appointments, and he took son to his therapy sessions. The children were generally well behaved.

In late 2019, mother and father "separated" because they were no longer in love but they nonetheless continued living together. Father's demeanor changed toward daughter; he would not let her go places and hang out with her friends, and insisted that she be picked up from school rather than walk home. Periodically, father would touch daughter's thigh. She thought it was a joke.

Mother was told there would be a scheduled power outage the night of February 15, 2020. That night, daughter woke up around 3:00 a.m. to see her father leaning over her looking out a window. Mother and son were asleep in their bed. Father covered daughter's head with a blanket and then put his hand inside her underwear. He rubbed her vagina for several minutes. Also, he pulled down her pants and underwear and put his mouth on her vagina. He used his tongue on the outside area for "a while." She pretended to be asleep. After he went back to bed, she went to the bathroom where she stayed for 30 minutes and cried. He texted, "Hey are you ok? What's wrong?" She replied that she was sick and taking medicine.

3

The next morning, daughter disclosed the touching but not the oral copulation to mother.[2] Mother told father to leave the home. She checked for a recording on the security cameras but did not find one. She suspected that father planned the molestation for the night that the security cameras were not operating.

A week after the incident, father called daughter and said "he was sorry for what he did and for not being able to see" son. But when father was questioned by a social worker, he denied the incident.

The Department removed son and daughter from father's physical custody and then filed a section 300 petition pursuant to subdivisions (b), (d) and (j) alleging: Father sexually abused daughter. "On or about 2/15/2020, the father fondled the child's vagina and orally copulated the child's vagina. Such sexual abuse of the child by father endangers the child's physical and emotional health and safety and places the child, and the child's sibling, [son], at risk of serious physical and emotional harm . . . and sexual abuse."

Son was interviewed and stated that his parents never hit or spank him. I.G. said he never observed anything in the home that caused him concern. A maternal uncle said he considered father a good person and that mother and father took good care of the children. Mother said father was a good parent who was very involved with the children's school, medical appointments and son's therapy. She was shocked and surprised by the sexual abuse.

---

[2]    At times, daughter denied the oral copulation. She did, though, reveal it to nurses at a hospital. At some point, she revealed it to mother.

Prior to the detention hearing, Department recommended that father participate in individual/family counseling, sexual abuse awareness counseling, and parenting classes. In April 2020, the juvenile court ordered the children detained from father and released to mother under Department's supervision.[3] In September and November 2020, Department reported that father had not enrolled in any court-ordered programs. He had four-hour monitored visits with son on Sundays.

Father's adult daughter stated that she did not think father was capable of sexual abuse and believed the children were safe with him. She added that she has a good relationship with father, and she did not suffer sexual abuse when she was growing up. She monitored father's visits with son and reported no concerns. The visits were consistent and son was happy to see father.

In a November 2020 addendum report, the Department notified the juvenile court that father had not enrolled in any court-ordered programs.

In the jurisdiction/disposition report, the Department reported that son has a strong attachment to and bond with father. Father continued to deny the sexual abuse but said he was willing to participate in programs. He told a social worker: "I would like everything to be normal. I would like to see my children without restrictions. I need my kids. I miss them." He said that he wanted to visit daughter when she was ready.

---

[3]    A September 2020 Interim Review Report refers to court-ordered programs for father. Presumably, those programs are consistent with Department's recommendations. The record, however, offers no confirmation.

On December 1, 2020, the juvenile court held a combined jurisdiction and disposition hearing. Father's attorney argued that son should be dismissed because he is a different sex from daughter and is therefore differently situated. The attorney representing son and daughter argued that son was differently situated and not at risk of harm from father. The juvenile court ruled that Department met its burden of proving that father sexually abused daughter but then ruled that son was "differently situated from his sister." It dismissed the petition as to son and sustained the remaining counts as to daughter. Daughter was removed from father's custody and placed with mother under Department's supervision. It ordered family preservation services for mother. As for father, the juvenile court ordered sex abuse counseling for perpetrators, programs for parenting and fatherhood, and individual counseling.

This appeal followed.

## DISCUSSION

Department contends that the juvenile court erred when it dismissed son from the section 300 petition at the jurisdiction hearing. "[W]e review the juvenile court's jurisdictional findings for substantial evidence. [Citations.]" (*In re R.C.* (2011) 196 Cal.App.4th 741, 748.) Typically, we review the record in the light most favorable to the juvenile court's determinations while drawing all reasonable inferences that the evidence offers. The ultimate question is whether there is substantial evidence that would permit a reasonable trier of fact to conclude that the order and findings are appropriate. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193; *In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Conceptually, this can be difficult when we are asked to review whether a party successfully proved a claim that a

juvenile court rejected.  To rephrase the law in more palatable terms, one court explained that the question is "whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

**I.  The Relevant Statutory Provisions.**

A child can be adjudged a dependent child of the court under, inter alia, section 300, subdivisions (b), (d), and (j) if there is a substantial risk that he will suffer serious physical harm as a result of a parent's failure or inability to adequately supervise or protect the child; there is a substantial risk that the child will be sexually abused as defined by Penal Code section 11165.1;[4] and if his sibling has been abused or neglected as defined in section 300, subdivisions (a), (b), (d), (e), or (i) and there is a substantial risk the child will suffer the same abuse or neglect.

**II.  Section 300, Subdivision (j).**

The primary focus of Department's briefs is on whether the juvenile court erred when it dismissed the count in the petition based on section 300, subdivision (j).

Under section 300, subdivision (j), the sibling abuse provision, a juvenile court "shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any

---

[4]     The definition of sexual abuse means sexual assault or sexual exploitation by various acts including oral copulation, sexual contact between the genitals of one person and the mouth or tongue of another person, and intentional touching for sexual arousal.  (Pen. Code, § 11165.1.)

7

other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).) Subdivision (j) "implies that the more egregious the abuse, the more appropriate [it is] for the juvenile court to assume jurisdiction over the siblings. [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 778 (*I.J.*).)

By including a list of factors that the other subdivisions of section 300 lack, subdivision (j) indicates that a juvenile court must consider the totality of the circumstances. It authorizes a juvenile court to consider factors that might not be determinative if it were adjudicating a petition directly under one of the other subdivisions. As a result, subdivision (j) "'accords the [juvenile court] greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than [it] would have in the absence of that circumstance.' [Citation.]" (*I.J.*, *supra*, 56 Cal.4th at p. 774.)

In the context of a section 300, subdivision (j) case in which the petition alleges sexual abuse of a sibling, we note the following: "'Although the danger of sexual abuse of a female sibling . . . may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial.' [Citation.] The juvenile court need not compare relative risks to assume jurisdiction over all the children of a sexual abuser, especially when the abuse was as severe and prolonged[.]" (*I.J.*, *supra*, 56 Cal.4th at p. 780.) Thus, "when a father severely sexually abuses his own child, the [juvenile court] may assume jurisdiction over, and take steps to protect, the child's siblings." (*Ibid.*) As explained by *I.J.*, "If the sibling abuse is relatively minor, the [juvenile court] might reasonably find insubstantial a risk the child will be similarly

8

abused; but as the abuse becomes more serious, it become more necessary to protect the child from even a relatively low probability of that abuse." (*Id*. at p. 778.)

The takeaway from *I.J.* is that the sexual abuse of a child can pose a risk of sexual abuse to a sibling but it depends on the circumstances. This is a case-by-case analysis. As *I.J.* explained, "the juvenile court is supposed to use its best judgment to determine whether . . . the particular substantial risk exists." (*I.J.*, *supra*, 56 Cal.4th at p. 779.)

Here, there was a single, short incident of sexual abuse perpetrated on daughter. Father's adult daughter had a good relationship with him and had not suffered any sexual abuse. No evidence suggested that he has sexual interest in males. Mother is protective of her children and promptly forced father to leave the family home upon learning of his crime. The juvenile court exercised jurisdiction over son for the better part of a year and all his visits with father went well. Moreover, son was happy to visit with father. Also, the evidence suggests that son is differently situated from daughter due to his gender, cerebral palsy, developmental delays, and his continued good relationship with father. These facts support a reasonable inference that despite father's lone aberrant crime against daughter, son is not at substantial risk of being sexually abused by father. Thus, this is not a case in which the evidence compels a finding of jurisdiction over son as a matter of law.

## III.  Section 300, Subdivisions (b) and (d).

Department asserts the same arguments regarding the counts alleged under section 300, subdivisions (b) and (d) as it did for the count alleged under section 300, subdivision (j), i.e., the sexual abuse of daughter placed son at risk of sexual abuse and

9

therefore the dismissal was not supported by sufficient evidence. Those arguments fail for the same reasons we explained in part II of the discussion.

Separately, Department contends that father's sexual abuse of daughter established that he abandoned his role as a protective parent and placed son at substantial risk of suffering serious physical harm within the meaning of section 300, subdivision (b).  This argument fails, too, because Department does not explain how the lone incident of sexual abuse necessarily created a risk of serious physical harm to son, i.e., why the evidence compels a finding of jurisdiction over son under section 300, subdivision (b) as a matter law.

## DISPOSITION

The order dismissing son from the section 300 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:



_____, P. J.
LUI



_____, J.
HOFFSTADT


10