Filed 12/23/25  In re A.G. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.G. et al., Persons Coming Under the Juvenile Court Law. | B343051 (Los Angeles County Super. Ct. No. 24CCJP02989) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>     v.<br><br>JOSE G.,<br><br>          Defendant and Appellant;<br><br>ARIANNA G.,<br><br>          Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Syna N. Dennis, Judge Pro Tempore. Affirmed.

Akila A. Shenoy, under appointment by the Court of Appeal, for Defendant and Appellant Jose G.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Principal Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Respondent Arianna G.

———————————

Defendant and appellant Jose G. (father) and respondent Arianna G. (mother) have two children, A.G. and Brandon G. In the judgment dissolving father's and mother's marriage, the family court awarded sole physical custody of the children to mother and authorized father to have unsupervised overnight visits. The Los Angeles County Department of Children and Family Services (DCFS or the agency) later filed a dependency petition for A.G. and Brandon G., alleging father violated a restraining order protecting mother and abused the children emotionally. At a combined jurisdiction and disposition hearing, the juvenile court sustained the petition, declared A.G. and Brandon G. dependents of the court, and terminated jurisdiction with orders awarding mother sole physical custody and granting father monitored visits with A.G., unmonitored visits with Brandon G., and less visitation time with the children than father previously had under the judgment of dissolution.

On appeal, father argues the juvenile court erred by issuing its custody and visitation orders without finding, by clear and convincing evidence, that father presented a substantial danger to the children and there existed no reasonable means to protect the children without removing them from his physical custody for the purposes of Welfare and Institutions Code[1] section 361, subdivision (d). Father does not otherwise challenge the court's rulings. We conclude that subdivision (d) was inapplicable because father did not have "physical custody" of the children for the purposes of that provision. (See § 361, subd. (d).) Instead of taking the children from father's physical custody, the juvenile court merely altered father's visitation rights. Accordingly, we affirm the custody and visitation orders.

## PROCEDURAL BACKGROUND[2]

We summarize only those facts that are relevant to our disposition of this appeal.

On July 8, 2024, a family court filed a judgment dissolving mother's and father's marital relationship. The judgment of dissolution declared that mother and father are the parents of A.G. (born in 2012) and Brandon G. (born in 2016), awarded mother sole legal and physical custody, and granted father unsupervised visits on (a) the first, third, and fifth weekends of the month from Friday at 6:00 p.m. to Monday at 8:00 a.m. or

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] We derive our Procedural Background in part from admissions made by the parties in their briefing. (*Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943, 948, fn. 1 [utilizing this approach].)

drop off at school, and (b) "Wednesday from 3:00 pm or pick up at school until 8:00 pm" during the school year and "Wednesday at 3:00 P.M. to Thursday at 8:00 P.M." during "Summer break . . . ."

On September 20, 2024, DCFS filed a dependency petition on behalf of A.G. and Brandon G. At the initial hearing held on October 7, 2024, the juvenile court detained the children from father, released them to mother, and authorized father to have monitored visits.

In November 2024, DCFS filed a first amended petition seeking dependency jurisdiction over A.G. and Brandon G. under section 300, subdivisions (b)(1) and (c) on account of, inter alia, father's "violat[ions of] an active restraining order that protects mother from father" and father's "emotional abuse" of A.G. and Brandon G. In light of DCFS's filing of the first amended petition, the juvenile court dismissed the dependency petition filed on September 20, 2024.

At the combined jurisdiction and disposition hearing on December 11, 2024, the juvenile court sustained the first amended petition; declared the children dependents of the court; awarded the parents joint legal custody and mother sole physical custody; granted father monitored visits with A.G. and unmonitored visits with Brandon G.; terminated dependency jurisdiction; and stayed the order terminating jurisdiction pending issuance of juvenile custody orders. The court thereafter: (1) issued juvenile custody orders (a) awarding the parents joint legal custody and mother sole physical custody; (b) granting father no less than nine hours of monitored visitation with A.G. each week; and (c) authorizing father to have unmonitored visitation with Brandon G. a minimum of

4

nine hours per week; and (2) terminated dependency jurisdiction. Father timely appealed from these rulings.

On May 21, 2025, father's appointed appellate counsel filed an opening brief raising no issues pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835. Father later submitted a supplemental brief in pro. per. arguing, inter alia, the juvenile court failed to make "removal findings" prior to issuing the custody orders. On July 23, 2025, this court found father had made " 'a showing of good cause that an arguable issue does, in fact, exist' " (quoting *Phoenix H., supra*, 47 Cal.4th at p. 844), and requested briefing from counsel for the parties on the following three questions:

1. Upon conducting a combined jurisdiction and disposition hearing and before issuing orders awarding sole physical custody of A.G. and Brandon G. to mother and granting father visitation, was the juvenile court required to find by clear and convincing evidence that removal was proper under section 361, subdivisions (c) or (d)?

2. If the answer to question #1 is yes, then did the juvenile court in fact make the removal findings required by section 361, subdivisions (c) or (d)?

3. If the answer to question #1 is yes but the answer to question #2 is no, then what impact, if any, would the juvenile court's failure to make the required removal findings have on the validity of the court's dispositional rulings?

Counsel for father, mother, and DCFS have since briefed these questions.

## APPLICABLE LAW AND STANDARDS OF REVIEW

Section 361, subdivision (c) provides in pertinent part: "A dependent child shall not be taken from the physical custody of their parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive . . . ." (See § 361, subd. (c).) Subdivision (c)(1) in turn applies if "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (See *id.*, subd. (c)(1).) Subdivision (c)(3) applies when "[t]he minor is suffering severe emotional damage, as indicated by extreme anxiety, depression, withdrawal, or untoward aggressive behavior toward themselves or others, and there are no reasonable means by which the minor's emotional health may be protected without removing the minor from the physical custody of their parent . . . ." (See *id.*, subd. (c)(3).)

Similarly, section 361, subdivision (d) provides in relevant part: "A dependent child shall not be taken from the physical custody of their parents . . . with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing

the child from the child's parent's . . . physical custody." (See § 361, subd. (d).)

"The court shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"When 'the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child . . . the juvenile court on its own motion[ ] may issue . . . an order determining the custody of, or visitation with, the child.' [Citation.]" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*), quoting § 362.4, subd. (a).) This custody/visitation order, which is "commonly referred to as an 'exit order[,]'[ ] . . . will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.' " (See *In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*), fn. omitted.)

"[T]he proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we review de novo." (*In re R.C.* (2011) 196 Cal.App.4th 741, 748.) "[R]egardless of the applicable standard of review," "[t]he appellant bears th[e] burden of rebutting the presumption of correctness accorded to the [lower] court's decision . . . ." (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 777.) To discharge this burden, the appellant must support the positions taken with " ' "reasoned argument and citations to authority . . . ." ' [Citation.]" (See *In re J.F.* (2019) 39 Cal.App.5th 70, 79–80 & fn. 5.)

Even if we were to hold the juvenile court erred in failing to make the findings specified in subdivisions (c) or (d) of section 361, that error would " 'be deemed harmless [if] "it is not reasonably probable such finding, if made, would have been in

7

favor of continued parental custody.' ' [Citation.]" (See *In re L.O.* (2021) 67 Cal.App.5th 227, 247; see also *id.* at pp. 246–247 [applying this harmless error test to a juvenile court's failure to make findings under § 361, subd. (c), and indicating this standard applies to " 'cases involving a court's [failure to discharge its] obligation to make findings regarding a minor's change of custody or commitment' "].)  " 'Reasonable' probability means merely a reasonable chance that is more than an abstract possibility; it does not mean more likely than not." (*L.O.*, at p. 247.)

## DISCUSSION

Before the dependency proceedings commenced, the family court had issued a judgment awarding mother sole legal and physical custody of A.G. and Brandon G. and granting father unmonitored visitation with the children on (a) the first, third, and fifth weekends of the month; and (b) each Wednesday from 3:00 p.m. or pick up at school until 8:00 p.m. during the school year, and, during summer break, from Wednesday at 3:00 p.m. to Thursday at 8:00 p.m.  (See Procedural Background, *ante.*)  After holding a combined jurisdiction and disposition hearing, the juvenile court terminated jurisdiction with orders awarding: mother sole physical custody of A.G. and Brandon G.; joint legal custody of the children to both parents; and father a minimum of nine hours' weekly monitored visitation with A.G. and a minimum of nine hours' weekly unmonitored visitation with Brandon G.  (*Ibid.*)  Thus, the juvenile court's exit orders reduced the minimum amount of time father could visit the children, and eliminated his preexisting right to unmonitored visitation with A.G., replacing it with monitored visitation.  On appeal, father, mother, and DCFS agree that the juvenile court did not make the

findings required to take a child from the physical custody of his or her parent pursuant to either subdivisions (c) or (d) of section 361.

According to father, although "the juvenile court was not required to apply Section 361, subdivision (c)" "[b]ecause the children did not reside with [him] at the time the petition was initiated," "the juvenile court was required to find by clear and convincing evidence that removal was proper under section 361, subdivision (d) before issuing [these] exit orders . . . ." In contrast, mother contends the juvenile court was required to make findings under subdivision (c) of the statute, but the court's failure to do so was harmless. For its part, DCFS argues that neither subdivisions (c) nor (d) of the statute applies because the juvenile court did not remove the children from father's physical custody. Further, per DCFS, even if the court erred by not rendering the findings required by subdivisions (c) or (d), any such error was harmless.

We agree with father that section 361, subdivision (c) was inapplicable because the children did not reside with him when the agency filed the dependency petition. (Discussion, part A, *post*.) We also agree with the agency that subdivision (d) does not apply because the juvenile court did not take the children from father's physical custody, but merely altered the duration of his visitation and, with regard to A.G., required monitored visitation. (Discussion, part B, *post*.) Accordingly, the juvenile court did not err in issuing the exit orders without first making findings under section 361, subdivisions (c) or (d). We thus do not address mother's and DCFS's assertions of harmless error.[3]

---

[3] Our decision also moots DCFS's assertion that father did not preserve for appeal his claim the juvenile court erred by

9

## A. Section 361, Subdivision (c) Did Not Apply Because the Children Did Not Reside With Father When DCFS Filed the Dependency Petition

As noted above, section 361, subdivision (c) constrains a juvenile court's authority to "take" a "dependent child" "from the physical custody of their parents . . . with whom the child *resides* at the time the petition was initiated . . . ." (See § 361, subd. (c), italics added.)

Mother appears to argue section 361, subdivision (c) applied because the children resided with father at the time DCFS filed the petition. She maintains, "[T]he petition [filed on September 20, 2024] stated, prior to intervention, Minors lived with Mother and Father." She further contends, "The supporting affidavit for an order authorizing entry into [the] home for removal purposes stated the children were currently located [with] father. DCFS was not seeking to remove the children from Mother or enter her home. [Citation.] On September 17, 2024[,] the court ordered removal of the children from Father."[4] Mother also contends, "When [a children's social worker] interviewed Brandon [on August 6, 2024,] she stated she knew that Brandon lived in two homes, one with his mother and one with his father."

_____

failing to make the findings required by section 361, subdivision (d).

[4] DCFS's detention report indicates that on September 18, 2024, the agency was unable to serve the removal warrant on father at his home because he was in Arizona. It appears that when the agency attempted to serve father with the warrant, the children were at school, mother intended to pick them up upon dismissal from class, and father did not intend to return from Arizona for several days.

The excerpts from the record mother cites indicate the agency may have been confused at the outset of the proceedings as to whether A.G. and Brandon G. resided with both parents. Nevertheless, mother, father, and the agency acknowledge that at the outset of the dependency case, mother had sole physical custody of the children and father was entitled only to visits. Furthermore, according to the detention report, the children resided with mother and the parents lived at different residences when the dependency proceedings commenced. These facts establish, as a matter of law, that for the purposes of section 361, subdivision (c), the children did not "reside" with father "at the time the petition was initiated . . . ."[5] Therefore, the juvenile court did not err by issuing the exit orders without making the findings required by the statute.

---

[5] (§ 361, subd. (c); see Discussion, part B, *post* [explaining that a parent who has "sole physical custody" of a child has the exclusive right to reside with, and determine the placement of, the child, whereas the other parent may have the right to visitation]; see also *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 351–353 & fn. 10 (*Anthony Q.*) [holding that with certain exceptions not relevant here (e.g., when the parent is incarcerated), " 'resides' as used in section 361, subdivision (c), [means] 'to dwell permanently or for a considerable time[,]' " and that "the Legislature plainly intended the formal commencement of the dependency action to be the relevant point for determining whether the child at risk was residing with one or both of his or her parents"]; *In re Julien H.* (2016) 3 Cal.App.5th 1084, 1089 [concluding that a father who had "unmonitored weekend visits" with his child did not "reside" with the minor for purposes of § 361, subd. (c)].)

**B. Section 361, Subdivision (d) Did Not Apply Because Father Did Not Have Physical Custody of the Children**

DCFS argues, "The juvenile court was not required to make orders removing the children from father's physical custody [under subdivision (d) of section 361] prior to issuing the juvenile custody order[s]." (Boldface & some capitalization omitted.) The agency advances two arguments in support of this position: (1) "Altering the parameters of father's visitation did not remove physical custody of the children from father"; and (2) "the juvenile court is not required to make removal orders when issuing a juvenile custody order [if] it terminates jurisdiction over a child" "immediately after the jurisdiction and disposition phase of the proceedings . . . ."[6] Although father disagrees with DCFS's second argument, absent from his briefing is any response to DCFS's first contention that subdivision (d) did not restrict the juvenile court's authority to modify father's visitation rights. We now turn to that question.

By its terms, section 361, subdivision (d) provides, "A dependent child shall not be taken from the physical custody of

_____

[6] DCFS also offers these two arguments in support of its position that section 361, subdivision (c) did not apply. In light of our conclusion subdivision (c) was inapplicable because the children did not reside with father at the time the agency filed the dependency petition in September 2024, we do not address whether subdivision (c) was inapplicable for the additional reasons advanced by DCFS, that is, the agency's assertions that (1) altering the parameters of father's visitation did not constitute a removal under that provision, and (2) the provision does not apply if a juvenile court is terminating jurisdiction with an exit order at the dispositional phase.

their parents . . . with whom the child did not reside at the time the petition was initiated" unless the juvenile court finds clear and convincing evidence that "there would be a substantial danger" to the child "for the parent . . . to live with the child or otherwise exercise the parent's . . . right to physical custody, and there are no reasonable means" to protect the child "without removing" him or her from "the parent's . . . physical custody." (See § 361, subd. (d).)  Courts construing the term "physical custody" in this context have found it refers to " '[t]he right to have the child live with the person' " (see *In re A.T.* (2025) 110 Cal.App.5th 722, 733–734 (*A.T.*)), and "the right to determine [the child's] placement" (see *Anthony Q.*, *supra*, 5 Cal.App.5th at pp. 339, 354).[7]

Prior to the commencement of the dependency proceedings, father did not have the right to live with the children or determine their placement because the family court had awarded mother sole physical custody and granted father only visitation. (See Procedural Background, *ante*; see also *A.T.*, *supra*, 110 Cal.App.5th at p. 733 [observing that " 'sole physical custody' . . . mean[s] 'that a child shall reside with and be under the supervision *of one parent*, subject to the power of the court to

---

[7] Although *Anthony Q.* construed the term "physical custody" in section 361, subdivision (c) (see *Anthony Q.*, *supra*, 5 Cal.App.5th at p. 339), the Court of Appeal's interpretation is instructive because subdivision (d) employs that term as well (see § 361, subd. (d); see also *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 173 [" ' "It is elementary that, absent indications to the contrary, 'a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law . . . .' " ' "]).

order visitation[,]' " quoting Fam. Code, § 3007, italics added].) Because father did not have "physical custody" of the children, the juvenile court could not have "taken" A.G. and Brandon G. from his physical custody. (See § 361, subd. (d).) Therefore, section 361, subdivision (d) did not require the court to find clear and convincing evidence that father posed a substantial danger to the children and there existed no reasonable means to protect them short of removal before it could modify the terms and conditions of his visitation. Rather, the court had the authority to formulate a "visitation order at termination based on the children's best interests." (See *T.S.*, *supra*, 52 Cal.App.5th at p. 514; see also *id.* at p. 513 [noting that in "issu[ing] a custody and visitation" exit order, " 'the court's focus and primary consideration must always be the best interests of the child' "].)[8]

California Rules of Court that correspond to subdivision (d) of section 361 bolster our conclusion.[9] Specifically, rule 5.695(c)(2) refers to an order issued pursuant to section 361, subdivision (d) as a ruling by which "a dependent [is] *removed* from the physical custody of a parent . . . ." (See rule 5.695(c)(2),

---

[8] On appeal, the custody and visitation provisions of an exit order are reviewed for abuse of discretion. (See *N.M.*, *supra*, 88 Cal.App.5th at p. 1094.) Father's counsel does not argue the juvenile court abused its discretion by issuing the visitation orders in question.

[9] (See *In re T.G.* (2020) 58 Cal.App.5th 275, 288, 291 & fns. 12 & 15 [noting that "[r]ules adopted by the Judicial Council," including the California Rules of Court, " 'are entitled to a measure of judicial deference' "].)

Undesignated rule citations are to the California Rules of Court.

italics added; see also rule 5.695(c) [the heading for rule 5.695(c)(1) & (c)(2) reads "*[r]emoval* of custody-required findings (§ 361)," italics added, boldface & some capitalization omitted].)  Likewise, rule 5.695(d) requires a court issuing such a ruling to "consider whether reasonable efforts to prevent or eliminate the need for *removal* have been made . . . ."  (See rule 5.695(d), italics added.)  Rule 5.502(35) in turn defines " '[r]emoval' " as "a court order that takes away the care, custody, and control of a dependent child . . . from the child's parent . . . , and places the care, custody, and control of the child with the court, under the supervision of the agency responsible for the administration of child welfare . . . ."  (See rule 5.502(35).)  This definition of "[r]emoval" strongly suggests that section 361, subdivision (d) applies only if the court is suspending a parent's right to care for and live with the child or control the child's placement, and not the mere alteration of visitation rights.  (Cf. *Anthony Q.*, *supra*, 5 Cal.App.5th at pp. 339, 354 [indicating that a removal order issued under § 361, subd. (c) "suspend[s a parent's] custody rights"].)

Lastly, although father does not in his briefing respond directly to DCFS's argument that section 361, subdivision (d) did not restrict the juvenile court's authority to modify father's visitation rights, father does seem to argue that because subdivision (d) comes into play only if " 'the child *did not reside*" with the parent in question "at the time the petition was initiated' " (quoting § 361, subd. (d), italics supplied by father), the provision must apply to "noncustodial, offending parents" like him.  In advancing this argument, father overlooks the fact that a parent can have physical custody even if the minor does not reside with that parent.  (See, e.g., *Anthony Q.*, *supra*,

15

5 Cal.App.5th at pp. 339, 353 [noting that "[a]lthough [the child] was living with his stepgrandmother [and not with the child's father] when dependency proceedings were initiated, [the father] had sole legal and physical custody of the child" at that time].) Indeed, the statutory language requiring a court to assess whether "there would be a substantial danger" to the child "for the parent . . . to live with the child *or otherwise exercise the parent's . . . right to physical custody*" (see § 361, subd. (d), italics added) confirms that subdivision (d) applies to a parent who has the right to physical custody but does not live with the minor. Father is not such a parent because he lacked the right to physical custody of the children prior to the dependency proceedings.[10]

## DISPOSITION

We affirm the juvenile court's orders awarding sole physical custody of minors A.G. and Brandon G. to respondent Arianna G. and visitation to defendant and appellant Jose G.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

WEINGART, J.                    M. KIM, J.

---

[10] We thus do not address the agency's alternative argument that section 361, subdivision (d) does not apply to exit orders issued at the dispositional phase of the proceedings.