Filed 10/5/23  In re M.F. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.F., a Person Coming Under the Juvenile Court Law. | B322363 (Los Angeles County Super. Ct. No. 22CCJP00926A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JESUS F., <br><br> Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

The juvenile court exerted dependency jurisdiction over a seven-year-old boy after his father, Jesus F. (father), "tugged" at his penis and testicles 15 times. Father argues on appeal that there is insufficient evidence to support jurisdiction because father's repeated touching of his son's genitals was just a "game" that was "misunderst[ood]" by the court, and that we must reweigh the evidence independently. These arguments fundamentally misunderstand basic principles of appellate review. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

Father and A.V. (mother) met in 2011, got engaged in 2013, and had a son—M.F.—in November 2014. Their relationship was tumultuous. Both parents drank excessively, smoked marijuana, and used cocaine. Father and mother split up when M.F. was two years old, and their interactions continued to be contentious enough that they exchanged custody of M.F. at a police station. In 2018, a family court awarded father sole physical custody of M.F., with visitation rights granted to mother. Over the next few

2

years, the parents' custody arrangement evolved: M.F. generally lived with father and visited mother during the evening on weeknights; mother could also have overnight visits with M.F. but "didn't make herself available."

From the time M.F. was five years old until he was seven years old, father touched the child's penis and testicles on 15 separate occasions while M.F. bathed or showered. Father's touching was not part of any bathing routine, as the touching did not involve cleaning and M.F. regularly bathed on his own while staying with mother. Instead, father would put the tip of M.F.'s penis between his thumb and index finger, and then "tug[]" on it. Although father characterized this touching as a "game" and convinced M.F. that it was all done "for fun," father's touching "hurt" the child, and M.F. without fail asked his father to "stop" the tugging.

M.F. first reported this touching to mother in February 2022, but indicated that if mother had not believed him, he would have told his aunt or a teacher at school. M.F. loved father, but wanted the abuse to stop. He gave the same account of events to his maternal aunt, to social workers, and to a forensic examiner.

Father did not deny tugging on the child's genitals. Instead, he claimed he was merely "grabbing" his son's "nuts" in a "playful way" as part of a "game" in which father would touch M.F. while saying, "I'm going to get you." When invited by a social worker, father demonstrated *how* he tugged on his son's penis and commented that M.F.'s "balls are so cute." Father believed that his behavior was "appropriate" because he was not "feeling-up his child, sucking him off, jacking him off, or putting anything in his butt hole"—sexual assaults which father claimed "were done to" him when he was a child.

## II.     Procedural Background

On March 11, 2022, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over M.F. on the ground that father's prior "sexual[] abuse" of him "by repeatedly touching the child's testicles and grabbing the child's penis inflicting pain" placed M.F. at substantial "risk of serious physical harm" and created a substantial risk of sexual abuse (rendering dependency jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (b)(1) and (d)).[1]

On May 18, 2022, the juvenile court held the jurisdictional and dispositional hearing.  The court indicated its tentative ruling was to sustain the sexual abuse allegation because (1) its review of the forensic examination showed M.F. to be "consistent, detailed, [and] reluctant" in his account of what happened, and also showed that M.F. had no "axe to grind" because he *wanted* to be with father but wanted father's abuse to stop; and (2) father's abuse of M.F. was connected to sexual gratification based on father's own description of events.  After further argument from counsel, the court adopted its tentative ruling and sustained the allegation under subdivisions (b)(1) and (d) of section 300.[2]  The court found that father's touching of M.F. on 15 separate occasions causing the child pain constituted "sexual abuse" and not, as father characterized it, a "game."  The court declared M.F.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     The juvenile court dismissed additional allegations pertaining to mother's and father's physical abuse of M.F. and father's substance abuse; they are accordingly not pertinent to this appeal.

4

a dependent of the court, removed him from father's custody and placed him in the home of mother. The court ordered family maintenance services for both parents, as well as monitored visitation for father.

Father filed this timely appeal.

## DISCUSSION

Although father appeals both the juvenile court's jurisdictional and dispositional orders, his arguments solely attack the sufficiency of the evidence underlying the court's jurisdictional findings. Thus, we do not separately address the propriety of the court's dispositional order and presume father requests reversal of the disposition only if jurisdiction is reversed.

## I. Pertinent Law

Welfare and Institutions Code section 300, subdivision (d), authorizes a juvenile court to exert dependency jurisdiction over a child if the child "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in section 11165.1 of the Penal Code, by the child's parent or guardian or a member of the child's household." (Welf. & Inst. Code, § 300, subd. (d).) Penal Code section 11165.1, in turn, defines "sexual abuse" to include any act that violates Penal Code section 647.6 (annoying or molesting a child) or Penal Code section 288, subdivision (c)(1) (lewd or lascivious acts upon a child under the age of 14). (Pen. Code, § 11165.1, subd. (a).) The statute goes on to set forth a non-exhaustive list of conduct constituting "sexual abuse," including "[t]he intentional touching of the genitals or intimate parts . . . of a child . . . for purposes of sexual arousal or gratification, except that it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection

5

for, the child; or acts performed for a valid medical purpose." (Pen. Code, § 11165.1, subd. (b)(4).)

Because sexual intent "can seldom be proven by direct evidence, it may be inferred from the circumstances." (*In re Mariah T.* (2008) 159 Cal.App.4th 428, 440 (*Mariah T.*).) "To determine whether a defendant acted with sexual intent, all the circumstances are examined. Relevant factors include [(1)] the nature and manner of the touching, [(2)] the defendant's extrajudicial statements, [(3)] the relationship of the parties[,] and [(4)] 'any coercion, bribery or deceit used to obtain the victim's cooperation or avoid detection.' [Citation.] The requisite intent 'must be inferred from all the circumstances . . . . A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose . . . .'" (*In re R.C.* (2011) 196 Cal.App.4th 741, 750 (*R.C.*).)

We review the juvenile court's finding of jurisdiction for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Under this standard of review, our task is merely to assess whether the record contains evidence that is reasonable, credible, and of solid value sufficient for a reasonable trier of fact to make its orders. (*Ibid*.) In so doing, we consider the record as a whole, and resolve all conflicts and draw all reasonable inferences to support the juvenile court's findings; contrary to what father asserts, we may not reweigh the evidence or gainsay the juvenile court's credibility findings. (*Ibid.*; *In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)[3] Evidence from a single witness, even a

_____

[3] Relying on *People v. Vivar* (2021) 11 Cal.5th 510, *In re Rosenkrantz* (2002) 29 Cal.4th 616, and *In re Booth* (2016) 3

party, can be sufficient to support the trial court's findings. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451 (*Alexis E.*).)

## II.   Analysis

Father's challenge to the sufficiency of the evidence supporting jurisdiction under section 300, subdivision (d), is a narrow one. Father freely admits that he "repeatedly touch[ed] the child's testicles and grabb[ed] the child's penis" but argues that there was insufficient evidence that his conduct was done with a "sexual intent." We disagree. As noted above, sexual intent is, in most cases, established circumstantially by looking to a variety of factors. Here, those facts point to a sexual purpose: Father was tugging on M.F.'s penis regularly and so hard that it "hurt"; this was not part of "normal caretaking responsibilities," was not a demonstration of affection for M.F. (as most demonstrations of affection do not involve the nonconsensual infliction of pain), and certainly had no valid medical purpose.

---

Cal.App.5th 1284, father urges that appellate courts owe no deference to a juvenile court's assessment of a person's credibility if the person's statements are set forth in a report. Father is wrong. *Vivar* took pains to emphasize that its ruling regarding credibility determinations was confined to petitions for relief from criminal convictions filed under Penal Code section 1473.7, and neither *Rosenkrantz* nor *Booth* stands for the proposition that a juvenile court's assessment of credibility based upon its assessment of a witness's statements in light of competing evidence is entitled to no deference on appeal. Were that the rule, appellate courts would be tasked with reweighing credibility in most juvenile dependency appeals because the more relaxed rules regarding hearsay in dependency proceedings mean that many witnesses' statements are presented solely in documentary reports. We decline father's invitation to wholly transmogrify the nature of appellate review in these proceedings.

7

What is more, father is M.F.'s parent and father's insistence that this touching—which had no ostensible purpose *other than* sexual gratification for father—was a "game" was such a convincing "deceit" that even M.F. vacillated between saying the abuse "hurt" and saying it "was fun."

Father resists this conclusion with a blunderbuss volley of arguments.

First, father argues the court erred in not accepting, at face value, father's insistence that he was tugging on the child's penis as part of a "game" and thus not with any sexual intent. But it is the juvenile court's task to weigh father's self-serving statements against the other evidence, and the court acted reasonably in concluding that tugging on a seven-year-old boy's penis— repeatedly and in a manner that causes the boy pain—is not a "game" and has no viable purpose aside from a sexual one. We would reach the same conclusion were we independently assessing the evidence. Father's other statements about touching M.F.—that he engaged in that touching; that it was not as bad as "feeling [him] up . . . ," "jerking him off, jacking him off, or putting anything in his butt hole"; and that he voluntarily went to the police to ask if they had opened up an investigation into his conduct—could reasonably be viewed as evidence that father knew what he did, that he considered it to be a type of sexual touching (albeit a "lesser" type), and that he knew it was wrong because he was concerned he might be criminally prosecuted for it. Such evidence is consistent with a finding that father acted with sexual intent.

Second, father urges that his sexual touching of M.F. was less egregious than the sexual touching of the children in three other cases because his tugging of M.F.'s penis was not "an

inherently sexual act" (like the French kissing of a 12 year old in *R.C.*, *supra*, 196 Cal.App.4th at p. 750), because father did not sexually abuse any other child (as in *In re Jordan R.* (2012) 205 Cal.App.4th 111, 137), and because father did not try to "silence" M.F. (as in *Mariah T.*, *supra*, 159 Cal.App.4th at p. 432). But none of these cases purport to set the floor for what constitutes "sexual abuse." What is more, father's tugging of M.F.'s penis appears to be an "inherently sexual act"; we decline to adopt father's proffered "it's okay as long as it's just one child" or "it's okay as long as you don't ask the child to be quiet about it" rules; and father's mantra-like insistence that the touching was a "game" or a "joke" was akin to trying to silence M.F. into believing the touching was acceptable and thus nothing to report to other adults.

Third, father disagrees with portions of the juvenile court's analysis. He contends the court "attached unwarranted meaning" to father's remark that M.F.'s "balls are so cute" because the court, in its ruling, commented that the remark "[took the case] to a different realm." Father elaborates that "cute" can be an innocuous term (and he uses the bare-bottomed girl in the 1950s Coppertone ads as an example), and insists that is how he meant the word here. The juvenile court acted reasonably in rejecting such a characterization in light of the totality of the evidence in this case. Father next contends that the juvenile court wrongly inferred father's intent to sexually abuse M.F. from father's status as a victim of sexual abuse when father was a child. But the court drew no such inference.

Lastly, father also attacks the sufficiency of the evidence supporting jurisdiction under subdivision (b) of section 300. However, we need not consider that challenge because our

9

conclusion that the evidence is sufficient to support jurisdiction under subdivision (d) of section 300 is enough to affirm. (See *Alexis E.*, *supra.*, 171 Cal.App.4th at p. 451 [when a dependency petition alleges multiple bases for jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction if any one of the bases is supported by substantial evidence].)

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST