Filed 1/9/24  In re I.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re I.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080486 |
| Plaintiff and Respondent, | (Super.Ct.No. J294336) |
| v. | OPINION |
| O.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed in part; reversed in part.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant O.D. (mother) contends there was insufficient evidence to support the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300, subdivisions (b) and (d), regarding her child, I.H. (the child). Mother also argues the court erred in removing the child from her custody and in bypassing her reunification services under section 361.5, subdivision (b)(6). We reverse in part and affirm in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2022, plaintiff and respondent San Bernardino County Department of Children and Family Services (CFS) filed a section 300 petition on behalf of the child, who was nine years old at the time. The petition alleged that she came within subdivisions (b) (failure to protect), (d) (sexual abuse), and (g) (no provision for support). The petition contained the following allegations under section 300, subdivision (b): mother had developmental delays and mental health concerns, which impaired her ability to protect and safely care for the child; and the child's father, O.H. (father),[2] had an extensive criminal history. Under section 300, subdivision (d), the petition alleged that mother allowed the child to continuously be sexually abused by her boyfriend, A.M.,

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] Father is not a party to this appeal. Therefore, this opinion will focus on the allegations concerning mother. The allegation under section 300, subdivision (g), concerned father only.

including letting him watch the child shower, massaging her vaginal area over her clothing, and lying on top of her while in his underwear.

The social worker filed a detention report stating that, on April 26, 2022, CFS received a referral alleging sexual abuse and general neglect of the child. A subsequent referral was received on September 6, which the social worker stated "invalidat[ed] the previously agreed upon safety plan" and led to the investigation being reassigned from the prior social worker to the current one. The current social worker interviewed the child at school on September 6, and the child said A.M. was " 'a pervert, a pedophile, a meanie and a jerk, [and] he is inappropriate.' " The child stated mother told her A.M. was all those things. The child stated that A.M. would regularly " '[s]lap my butt and lay on top of me on the bed while he tickles in between my thighs' " and then pointed to her vaginal area. She said her clothing was on during those times. The child also said A.M. " '[h]ugs me and he's only wearing his underwear and I have to sleep in the middle of the bed between him and my mom even though I don't want to.' " The child said A.M. took her to the movies and was touching her stomach over her clothing. The child added, " 'My mom always sees him touching me and she doesn't say anything.' " The child further stated, " 'I go to his hotel sometimes, he slaps my butt there, he watches me take a shower with the glass door at his hotel.' "

The social worker called the reporting party, who was apparently mother's caregiver, Ms. G. Mother was a client of the Inland Regional Center (IRC) due to her intellectual disability, and she and the child lived with Ms. G. Ms. G. said she had made multiple reports to CFS over the last three years regarding the sexual abuse of the child,

3

but the previous social worker said CFS would not get involved " 'unless there is penile penetration.' " Ms. G. added the director of the agency[3] to the call with the social worker. The director said, as mother's caregivers, they tried to enforce their own safety plan, in order to keep A.M. from accessing the child. Ms. G. said that, after the child made multiple disclosures of sexually inappropriate conduct, the agency "attempted to coerce mother into keeping [the child] safe from [A.M.]" by informing her that she may go to jail for allowing him unrestricted access to the child. Ms. G. said that officers had also attempted to dissuade mother from allowing A.M. access to the child; however, after a few weeks would pass, mother would reunite with him because she was " 'obsessed' " with him and because she believed the allegations were not serious, since there had been no repercussions (i.e., the child had not been removed from her). Ms. G. reported that A.M. had picked up the child from school and taken her alone on outings.

The social worker spoke with mother, who stated she did not believe A.M. was a safety threat to the child, since the child said she was not afraid of him. The social worker informed mother the child was going to be placed in the care and custody of CFS, due to the safety threats. Mother said she wanted the child to stay with Ms. G., and she (mother) would move out of the house.

The court held a detention hearing on September 12, 2022, and removed the child from mother and detained her with Ms. G.

---

[3] The agency appears to be IRC.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on September 28, 2022, recommending that the court find the section 300, subdivisions (b) and (d) allegations true, and that no reunification services be provided to mother. The social worker reported that she interviewed mother on September 27, and mother adamantly denied the sexual abuse allegations, stating, " 'I believe [A.M.] will never hurt [the child].' " Mother reported she had been diagnosed with schizophrenia, bipolar disorder, and attention deficit hyperactivity disorder (ADHD), and described herself as very impulsive. She added that she had not taken any psychotropic medication since 2011.

The social worker reported that she also interviewed father, and he said mother had told him in the past that A.M. " 'has done things' " to the child and showed him a picture of A.M. lying on top of the child. Father said he had concerns about the child's safety in mother's care, and he told mother she needed to keep the child away from A.M. He also stated that mother's caregivers have reached out to him to express their concerns about the child's safety.

The social worker noted that mother had intellectual disabilities but observed that she was "fairly high functioning nonetheless" and knew right from wrong. The social worker reported that, although mother admitted she made bad decisions, she never expressed remorse for her actions. The social worker stated that mother appeared to be obsessed with A.M. and admitted she was currently living with him, but she said they were " 'just friends.' " The social worker stated that mother made it very clear she did not believe the child's disclosure of sexual abuse and had no concerns about continuing

5

to have A.M. around the child; thus, the social worker opined that it was not in the child's best interests to offer mother reunification services. The social worker recommended that services be provided to father.

The court held a jurisdiction/disposition hearing on October 3, 2022, and mother set the matter contested. The matter was continued to November 30.

On October 11, 2022, a forensic examination was conducted at the children's assessment center (CAC). The examiner spoke with Ms. G., who reported that she had known mother for some time, since mother lived in a residential facility she managed. Ms. G. said that, at some point, A.M. lived with mother and the child, and during that time, mother made statements that A.M. was more interested in the child than in her. Ms. G. stated the child told her that A.M. came into the bathroom when she was showering; A.M. would slap her butt and lie on top of her; and mother, the child, and A.M. would be lying together, and mother and A.M. would be "doing stuff" and trying to involve her, but the child "would tell him to stop."

The forensic interviewer spoke with the child, who said A.M. slapped her butt "a few times," and tickled her arm pits and between her thighs. The child pointed to her upper inner thighs to show where he tickled her. She said the slaps did not hurt and her clothes were on. She also said that she and mother frequently visited A.M. in different hotel rooms. During one hotel visit, mother took pictures of A.M. tickling the child while they were on the bed. The child said she was in " 'weird positions' " on the bed with him and described him as being on top of her while he tickled her between her thighs and blew on her stomach. She said she felt weird when he blew on her stomach. The child

6

added that mother did not say or do anything "because it was a 'funny moment' " and the child was laughing while he tickled her. During another hotel visit, the child recalled A.M. walking into the bathroom and just staring at her through the glass, while she was in the shower; he did not say anything. She covered her breast area with one arm and used her other hand to cover her vaginal area. The child said A.M.'s staring at her made her feel " 'nervous and disgusting.' " The child said she thought mother came into the bathroom after A.M. but did not remember mother saying or doing anything.

On November 22, 2022, the social worker filed an "Additional Information to the Court" memorandum, reporting that mother was dropped off at her supervised visit on October 3, by A.M., which scared the child a lot. The child had to be reassured that she was safe and would be protected from him. Mother was admonished but did not appear to have any insight into why it was inappropriate to have A.M. bring her to the visit. The social worker further reported she was informed that mother recently became pregnant by A.M., although mother may have terminated the pregnancy. Additionally, the social worker reported that Ms. G. was willing to provide long-term care for the child, and the child was attached to her and thriving in her home.

The court held a contested jurisdiction/disposition hearing on November 30, 2022. Mother's counsel objected to the allegations and requested reunification services. He asserted that mother was an IRC client, and while she had mental health concerns and developmental delays, they did not prevent her from providing a loving environment for the child. Counsel admitted that mother did witness A.M.'s actions as described in the jurisdiction/disposition report and argued that she has attempted to stop him and keep

7

him away from her daughter; however, she was not able to do so since she was vulnerable and was overpowered by him. Counsel asserted that mother "understands what has occurred is extremely serious and wrong" and said she "has completely separated" from A.M. and would ensure he would be kept out of her life and the child's life. Thus, mother's counsel asked that the allegations be stricken or modified.

Counsel for the child asked the court to sustain the allegations under section 300, subdivision (b), stating she believed mother's mental health issues and developmental delays had impeded her ability to protect the child, and citing mother's counsel's statements that mother was overtaken by A.M. and unable to maintain a safe environment for the child. The child's counsel also asked the court to sustain the allegation under subdivision (d), since mother knew her boyfriend was sexually abusing the child and still allowed him to be around her. The child's counsel questioned mother's claim that she was no longer in a relationship with A.M., as she was recently impregnated by him. County counsel agreed with the child's counsel and further pointed out that mother previously stated she absolutely did not believe A.M. had sexually abused the child.

After hearing arguments, the court found true the allegations under section 300, subdivisions (b) and (d); declared the child a dependent; and removed her from mother's and father's custody. The court adopted the social worker's recommended findings and orders. It ordered reunification services for father, but it denied them for mother pursuant to section 361.5, subdivision (b)(6), finding that she was aware of A.M.'s "severe sexual abuse" and that "all the behaviors afterwards are indicative of her failure to protect and take an active role in allowing this to happen."

8

I. The Court Properly Took Jurisdiction of the Child

Mother contends there was insufficient evidence to support the jurisdictional findings under section 300, subdivisions (b) and (d). We agree the evidence was insufficient to support findings under section 300, subdivision (b). However, we conclude there was sufficient evidence to support the true finding under subdivision (d). Thus, the court properly took jurisdiction of the child.[4]

A. *Standard of Review*

"The issue of sufficiency of the evidence in dependency cases is governed by the same rules that apply to all appeals. If, on the entire record, there is substantial evidence to support the findings of the juvenile court, we uphold those findings. [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or evaluate the weight of the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record most favorably to the juvenile court's order, and affirm the order even if other evidence supports a contrary conclusion. [Citations.] The

---

[4] We note that mother cites section 350, subdivision (c), to say that the juvenile court may dismiss a dependency petition when it finds the burden of proof has not been met. However, she does not actually argue that the court should have dismissed the petition pursuant to that statute. In any event, section 350, subdivision (c), is not relevant, since it applies "[a]t any hearing in which the probation department bears the burden of proof." (§ 350, subd. (c).)

appellant has the burden of showing the finding or order is not supported by substantial evidence." (*In re Christopher L.* (2006) 143 Cal.App.4th 1326, 1333.)[5]

B. *The Evidence Did Not Support the Findings Under Section 300, Subdivision (b)*

Section 300, subdivision (b), provides that the juvenile court may adjudge a child a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, *serious physical harm* or illness, as a result of . . . (A) [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child," or by " (D) [t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1), italics added.) "The standard of proof required in a section 300 dependency hearing is the preponderance of evidence." (*In re Basilio T.* (1992) 4 Cal.App.4th 155, 168.) "The statutory definition consists of three elements: (1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 (*Rocco M.*).)

The allegations sustained against mother under section 300, subdivision (b), were that she had developmental delays and mental health concerns which "impair[ed] her

---

**5** Mother agrees that a juvenile court's findings are reviewed under the substantial evidence test and goes on to argue that the findings under section 300, subdivisions (b) and (d), were not supported by substantial evidence. However, at the same time, she claims that de novo review is required, stating "this Court reviews de novo a mistake of law on disputed facts." However, mother's first position is correct that "[a] substantial evidence standard of review applies." (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.)

10

ability to protect and safely care for the child." However, no actual or substantial risk of serious *physical harm* to the child was argued or even alleged in this case. (§ 300, subd. (b)(1).) Moreover, although mother undisputedly had been diagnosed with schizophrenia, bipolar disorder, and ADHD, CFS offered no evidence that these issues/concerns caused, or created a substantial risk of causing, serious physical harm to the child. (*In re David M.* (2005) 134 Cal.App.4th 822, 830 (*David M.*); see *Rocco M.*, *supra*, 4 Cal.App.4th at p. 168.) Further, as mother points out, "the law is settled that harm may not be presumed from the mere fact of a parent's mental illness." (*In re A.L.* (2017) 18 Cal.App.5th 1044, 1050; *David M.*, at p. 830.)

Thus, because there was no evidence that mother's mental health issues created a substantial risk of physical harm, we conclude there was insufficient evidence to support the court's findings under section 300, subdivision (b).

C. *There Was Sufficient Evidence to Support the Court's Jurisdiction Under Section 300, Subdivision (d)*

Mother also argues there was insufficient evidence to support the court's true finding under section 300, subdivision (d). We disagree.

Section 300, subdivision (d), provides that a child may be declared a dependent of the court if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent or guardian . . . , or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." Section 11165.1 equates sexual

11

abuse with sexual assault, which it defines as including "[t]he intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose." (§ 11165.1, subd. (b)(4).)

Penal Code section 11165.1 also defines sexual assault as including child molestation under Penal Code section 647.6. (Pen. Code, § 11165.1, subd. (a).) Penal Code section 647.6, subdivision (a), states it is a misdemeanor offense for every person who "annoys or molests any child under the age of 18." Penal Code "section 647.6, subdivision (a), does not require a touching [citation] but does require (1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citation], and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim." (*People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).) "To determine whether a defendant acted with sexual intent, all the circumstances are examined." (*In re R.C.* (2011) 196 Cal.App.4th 741, 750 (*R.C.*).) Notably, "there can be no *normal* sexual interest in any child." (*People v. Shaw* (2009) 177 Cal.App.4th 92, 103.)

To support her argument that the section 300, subdivision (d) finding should be reversed, mother asserts the child was not penetrated in her vagina or anus, and A.M. did not expose his private parts to her or make her touch his penis. She further contends that A.M. did not do "anything alone with [the child] for his sexual gratification" and

12

essentially contends that his affection and interactions with her did not constitute sexual abuse, even if they made her feel uncomfortable.

Contrary to mother's assertions, although included in the definition of sexual abuse in Welfare and Institutions Code section 300, subdivision (d), and Penal Code section 11165.1, there is no requirement of penetration or exposure of private parts by the perpetrator under Welfare and Institutions Code section 300, subdivision (d). Furthermore, the evidence here supported a finding of sexual abuse, defined as child molestation (Pen. Code, § 647.6 [annoying or molesting a child under 18]) and "[t]he intentional touching of the genitals or intimate parts, including the . . . genital area, . . . inner thighs, and buttocks, or the clothing covering them, of a child, . . . for purposes of sexual arousal or gratification." (Pen. Code, § 11165.1, subds. (a) & (b)(4); Welf. & Inst. Code, § 300, subd. (d).) When interviewed at school in September 2022, the child stated that A.M. regularly slapped her on the butt and lay on top of her while he tickled her in between her thighs, and she then pointed to her vaginal area. She also said he would hug her while only wearing his underwear and would have her sleep between him and mother, even though she did not want to. The child similarly told Ms. G. that they would be lying together, and mother and A.M. would be "doing stuff" and trying to involve her, but the child "would tell him to stop." The child additionally said A.M. watched her take a shower through a glass door. The child stated, " 'My mom always sees him touching me and she doesn't say anything.' " Furthermore, father stated that mother told him A.M. " 'has done things' " to the child and showed him a picture of A.M. lying on top of the child.

13

The child reported the same conduct to the forensic interviewer. She said A.M. slapped her butt "a few times," and tickled her arm pits and between her thighs. The child pointed to her upper inner thighs to show where he tickled her. She said that she and mother frequently visited A.M. in different hotel rooms. During one hotel visit, mother took pictures of A.M. tickling the child while they were on the bed. The child said she was in "weird positions" on the bed with him and described him as being on top of her while he tickled her between her thighs and blew on her stomach. The child said she felt weird when he blew on her stomach. The child also reported that A.M. walked into the bathroom and just stared at her through the glass, while she was in the shower. The child said A.M. staring at her made her feel "nervous and disgusting." The child said she thought mother came into the bathroom after A.M. but did not remember mother saying or doing anything.

Additionally, in determining whether a defendant acted with sexual intent, "[t]he requisite intent 'must be inferred from all the circumstances.' " (*R.C.*, *supra*, 196 Cal.App.4th at p. 750.) Relevant factors include the nature and manner of the touching. (*Ibid.*) Considering A.M.'s conduct of slapping the child's butt on several occasions, lying on top of her, tickling her in the genital area, blowing on her stomach, hugging her when he was only wearing underwear, and especially staring at her while she was taking a shower, it is reasonable to infer A.M.'s sexual intent. (See *ibid.*) We also note that Ms. G. said mother made statements that A.M. was more interested in the child than in her. All of this evidence was sufficient to support a finding of sexual abuse, particularly child molestation under section 647.6.

14

Mother points out that CFS did not have the evidence of the forensic examination at the time the jurisdiction report was prepared, when it recommended the court find the child had been sexually abused under section 300, subdivision (d). She contends that the forensic report undermines CFS's recommendations, since it showed the child said mother did not say or do anything while A.M. slapped the child's butt, tickled her, and lay on top of her "because it was a 'funny moment' " and the child was laughing. However, the child's statements during the forensic examination were consistent with the statements she made to the social worker the month prior, which were contained in the jurisdiction/disposition report. In any event, regardless of whether the social worker had the forensic report when she made her recommended findings, the evidence of the forensic report was before the court at the jurisdiction/disposition hearing.

We conclude substantial evidence supports the court's finding that the child came within section 300, subdivision (d), as the evidence showed the child had been sexually abused and mother failed to adequately protect her from the abuse. The evidence showed that mother was aware of A.M.'s conduct and did nothing to stop him.

Finally, we note that, "[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Accordingly, even though there was insufficient evidence to support findings under section 300,

15

subdivision (b), the court properly took jurisdiction of the child, since the evidence supported the jurisdictional finding under section 300, subdivision (d).

## II. The Court Properly Removed the Child from Mother's Custody, But Erred in Bypassing Her Reunification Services

Mother argues that the disposition order removing the child from her custody and the court's order denying reunification services under section 361.5, subdivision (b)(6), must be reversed for lack of substantial evidence. We conclude the court properly removed the child from mother's custody but erred in bypassing her reunification services under section 361.5, subdivision (b)(6).

### A. *The Court Properly Removed the Child from Mother's Custody*

"Before the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146 (*Hailey T.*); § 361, subd. (c)(1).) "This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child." (*Hailey T.*, at p. 146.) "The standard of review of a dispositional order on appeal is the substantial evidence test." (*Ibid.*)

Mother argues there was insufficient evidence to support the removal order under section 361, subdivision (c)(1), and claims CFS never considered whether there were any reasonable alternatives to the child's removal, even when she voluntarily moved out of her home so the child could remain living there. Mother claims "[r]emedial measures

16

existed but were never explored, including allowing [her] custody . . . on condition that she would not permit any contact between [the child] and A.M." However, the record shows that, prior to CFS detaining the child from mother, her caregivers attempted to enforce their own safety plan, in order to keep A.M. from accessing the child. They attempted to "coerce" mother into keeping the child safe by telling mother she may go to jail for allowing A.M. unrestricted access to the child. Officers also attempted to dissuade mother from allowing A.M. access to the child. Despite these efforts, mother would reunite with A.M. because she was obsessed with him, and she did not believe the allegations were serious. Mother continued to allow the child to be around A.M., even by himself, as the evidence showed he picked up the child from school and took her on outings alone.

Furthermore, the social worker reported that mother never expressed remorse for her actions. In fact, she admitted that she was living with A.M., even after the disclosure of sexual abuse came out. The social worker stated that mother made it very clear she did not believe the child's disclosure of sexual abuse and had no concerns about continuing to have A.M. around the child. Although mother's counsel took a contrary position at the hearing and claimed that mother tried to stop A.M. but was overpowered by him, and that she had completely separated from him and would ensure that he would be kept out of their lives, counsel's argument was not evidence. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn 11.) We further note the evidence showed that mother had recently become pregnant by A.M., in contrast to counsel's claim.

17

Ultimately, the evidence showed that mother had no intention of keeping the child away from A.M. Thus, the court properly removed the child from her custody.

B. *The Court's Order Bypassing Reunification Services Should Be Reversed*

The court bypassed mother's reunification services pursuant to section 361.5, subdivision (b)(6), which provides that reunification services need not be provided to a parent where the court finds by clear and convincing evidence that "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." (§ 361.5, subd. (b)(6)(A).) As relevant here, "[a] finding of severe sexual abuse, for the purposes of this subdivision, may be based on, but is not limited to, sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, . . . between the child . . . and another person . . . with the actual or implied consent of the parent or guardian . . . ." (§ 361.5, subd. (b)(6)(B).)

Mother argues that the court misapplied the law defining sexual abuse under section 361.5, subdivision (b)(6), and that A.M.'s conduct did not meet the clear and convincing standard of evidence of severe sexual abuse under any of the definitions set forth in the statute. We agree that the evidence was insufficient to support a finding of severe sexual abuse.

The court here stated: "I'll add 361.5 (b)(6), and find the extensive knowledge and submission thereby allowing the boyfriend to sexually—it would be severe sexual

18

molestation, right, and that's clear in the report. It's clear in the CACs. So the Court will find that, for those reasons, Mother was aware. She wasn't just aware, but she failed to act knowing what she had to do to act and intervene and prevent that, and all the behaviors afterwards are indicative of her failure to protect and take an active role in allowing this to happen.· So the Court will find (b)6 is properly taken, and I will bypass her pursuant to (b)6, over [mother's counsel's] objection." We first note the court did not make an explicit finding that the child suffered severe sexual abuse within the meaning of section 361.5, subdivision (b)(6). The court appears to have been focused on mother's knowledge of A.M.'s conduct and failure to protect the child, rather than on A.M.'s actual conduct. Although the court did mention "severe sexual molestation" and referred to the CAC report, the evidence supported a finding of child molestation (Pen. Code, § 647.6) and "[t]he intentional touching of . . . [the] genital area, . . . inner thighs, and buttocks, or the clothing covering them, of a child . . . ." (Pen. Code, § 11165.1, subds. (a) & (b)(4).) (See *ante*, § I.) However, there was no evidence to support the required finding of *severe* sexual abuse, which, for the purpose of section 361.5, is defined as including "sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, . . . between the child . . . and another person . . . with the actual or implied consent of the parent . . . ." (§ 361.5, subd. (b)(6)(B).)

We further note section 361.5, subdivision (k), provides that "[t]he court shall read into the record the basis for a finding of severe sexual abuse . . . under paragraph (6) of subdivision (b), and *shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit*

19

*the child*." (Italics added.)  This provision "all but states that an on-the-record finding of severe sexual abuse . . . is required, in addition to an appropriate express finding concerning the lack of benefit to the child."  (*In re Rebekah R*. (1994) 27 Cal.App.4th 1638, 1651 (*Rebekah R*.).)  The record here does not reflect any discussion or finding by the court that providing mother with reunification services would not benefit the child. (§ 361.5, subd. (k).)

Ultimately, although we conclude the court properly removed the child from mother's custody, we cannot say the evidence was sufficient to support a finding that the child suffered severe sexual abuse within the meaning of section 361.5, subdivision (b)(6).  Without such clear and convincing evidence, the court could not properly rest its decision to bypass mother's services under section 361.5, subdivision (b)(6).  (See *Rebekah R*., *supra*, 27 Cal.App.4th at p. 1652.)

## DISPOSITION

The court's determination that the evidence supported juvenile court jurisdiction under section 300, subdivision (b) is vacated.  The court's disposition order denying mother reunification services under section 361.5, subdivision (b)(6), is reversed.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:


CODRINGTON _____
Acting P.J.


RAPHAEL _____
J.