Filed 2/23/24  P. v. Castro CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B319220 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA432941) |
| v. | |
| CHRISTIAN OSBELI CASTRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melissa Widdifield, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Assistant Attorney General, Susan Pithey, Senior Assistant Attorney General, Steven Matthews and Rama Maline, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Christian Osbeli Castro guilty of five counts of lewd acts against his wife's niece, minor Lisa C., which occurred when she was 13 and 15 years old. On appeal, Castro challenges only one of the convictions for committing a lewd act upon a child under 14 years old (Pen. Code, § 288, subd. (a)).[1] He contends the trial court erred in admitting an investigating police officer's testimony recounting Lisa C.'s preliminary hearing testimony. He also argues the evidence was insufficient to support the conviction. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Castro is married to Lisa C.'s paternal aunt. In November 2013, Lisa C. and her family traveled to Los Angeles to stay with the paternal aunt, Castro, and their family, for 15 days. Lisa C. was 13 years old at the time.

Lisa C. testified that during the visit, Castro kissed her on four occasions. During at least some of the kissing, Castro inserted his tongue into Lisa C.'s mouth.[2] The first time, Castro found Lisa C. sitting alone and kissed her. The second time, she was in the kitchen washing dishes. The third time, she was in the bathroom. The fourth time, Lisa C. was in an area she described as both the dining room and the living room. Lisa C.

---

[1]   All undesignated statutory references are to the Penal Code.

[2]   As described more fully below, Lisa C.'s testimony on the details of Castro's use of his tongue during the kissing was inconsistent and, ultimately, forms the basis of Castro's arguments on appeal.

testified she was alone in the dining room with Castro when he kissed her.

Castro also touched Lisa C. in other ways.  Once, when Lisa C.'s parents were away and she and Castro were "playing," Castro put his hand on Lisa C.'s shoulder.  He moved his hand down "little by little" towards her breast, eventually grazing it, and then he apologized.  At other times, while they were eating, Castro would put his hand on top of Lisa C.'s, out of sight of Castro's daughter and Lisa C.'s siblings.  Castro and Lisa C. would also touch their feet together under the table.  Lisa C. thought that "maybe [she] loved" Castro, and she felt for him the way that a "girl would like a boy."  On the last day of her visit, Lisa C. gave Castro a letter telling him she would be back the next year.

In late 2014 and early 2015, Lisa C.'s family visited Castro's home a second time.  Lisa C. was 15 years old.  At one point during the visit, Lisa C.'s parents left for a few days to visit San Francisco.  While they were gone, Castro and Lisa C. engaged in sexual contact on several occasions.  Castro kissed Lisa C.'s breasts, they engaged in oral sex, and they attempted to have sexual intercourse.

One night after Lisa C.'s parents had returned, Castro told Lisa C. to wait for him in the bathroom at 4:00 a.m.  Following his instructions, Lisa C. met Castro in the bathroom in the early morning hours of January 15, 2015.  While they were engaging in sexual activity, Lisa C.'s mother, Ivon C., knocked on the door after noticing that neither Lisa C. nor Castro was in bed.  Lisa C. did not open the door right away.  Ivon C. could hear movement inside the bathroom.  Castro left through the bathroom's back door.  After Lisa C. opened the bathroom door, Ivon C. entered,

3

looking for Castro. Ivon C. found Castro standing naked next to the bathroom's back door. Lisa C.'s father called the police.

During a recorded interview later that day with Los Angeles Police Department Sergeant Jackeline Orellana and a detective, Castro admitted he had kissed Lisa C. during her first visit in 2013. Castro said Lisa C. asked him to kiss her. He explained, "I knew the consequences of that . . . but she was going . . . back to Guatemala afterward anyway. And I said, I'm a man, what could I lose with a kiss? I gave it to her." Castro also told the officers that during the first visit, he and Lisa C. would touch "skin" at the table, and "sometimes when nobody was around . . . we'd kiss or we'd hold hands."

Castro said that in 2013, he had only "a nice feeling" for Lisa C., but he also admitted he was attracted to her "in some way." He explained: "I was starting to feel something . . . . I've had problems with my wife . . . . [¶] . . . [¶] . . . we're always fighting. We don't have intimacy." Castro admitted that in 2013, he would "look at [Lisa C.]" and "say how is it possible that she's thirteen years old," because she looked very developed and had breasts and buttocks larger than she did two years later. He denied touching her breasts in 2013 but said he noticed them because she wore tight blouses. When asked if he was tempted back then to touch her breasts, Castro answered "Who wouldn't. Not only touch her but—" He later admitted that he "started to like" Lisa C. in 2013, and she looked at him "differently," and "like she liked [him]," a look he was familiar with from going to a co-ed school. He explained: "I was familiar with those looks, when a girl looks at, at a man like that . . . at a guy like that. Well you stare."

4

Castro further described kissing Lisa C. in 2013: "I remember that I touched her face and I was about to kiss her . . . like this, basically very close to each other—No, you know I don't believe her. I told her, 'No,' I said, 'no.' 'Why?' she said to me. 'No.' . . . We kissed . . . I don't remember if it was that day at night or the next day but afterwards we did kiss each other. And she also hugged me around my neck . . . and well I kissed her." The police interviewer asked, "And didn't you think that maybe that wasn't appropriate?" Castro answered, "Of course." Castro additionally admitted that in 2013, on the way to the airport, he touched Lisa C.'s chest. He said he could not remember whether Lisa C. put his hand on her chest, or he grabbed her, but his hand started on her chest and ended on one of her breasts.

Castro also admitted having extensive sexual contact with Lisa C. during her second visit, including sexual touching, oral sex, and attempts at penetrative intercourse.

A sexual assault exam on January 15, 2015, revealed semen on Lisa C.'s face and buttocks. DNA found on her face, neck, hand, and buttocks was later linked to Castro.

The People charged Castro by information with three counts of committing a lewd act upon a child under 14 (§ 288, subd. (a)), corresponding to conduct during the November 2013 visit.[3] The People further charged Castro with four counts of

---

[3] At trial, the prosecutor told the jury that counts 1 and 2 covered the "incidents described where there was kissing on the mouth . . . that occurred in November of 2013." The prosecutor identified count 3 as involving "the touching of the victim's breasts that she described." The court instructed the jury on unanimity as to counts 1 and 2, informing the jurors: "The People have presented evidence of more than one act to prove that the

5

committing a lewd act upon a child who was 15 years old (§ 288, subd. (c)(1)), corresponding to conduct during the second visit.

A jury found Castro guilty of one count of lewd act upon a child under 14 (count 1) and not guilty on the two other counts alleging the same crime (counts 2 and 3). The jury further found Castro guilty of four counts of lewd act upon a child who was 15 years old (counts 4, 5, 6, and 7). The court sentenced Castro to an aggregate sentence of three years and eight months in state prison.

Castro timely appealed. On appeal, he challenges only the conviction on count 1.

## DISCUSSION

### I. The Trial Court Did Not Prejudicially Err in Admitting Evidence of Lisa C.'s Prior Testimony

Castro contends the trial court committed prejudicial error when it allowed Orellana to testify at trial regarding Lisa C.'s preliminary hearing testimony. He asserts the admission of this evidence violated state hearsay rules and his federal constitutional rights. We conclude that the trial court properly admitted the testimony as prior inconsistent statements. We further conclude that, even if the testimony was erroneously admitted, the error was harmless.

#### A. Background

At trial, the prosecutor asked Lisa C. on direct examination if Castro touched "any part of [her] body" during her 2013 visit.

---

defendant committed these offenses. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts for each of the charged counts and you all agree on which act [he] committed."

6

Lisa C. said no.  Yet, when the prosecutor explicitly questioned Lisa C. about Castro's kisses in November 2013, she admitted they happened.  Lisa C. testified that the first time Castro kissed her, it was on her mouth.  She also testified that she was sitting on a chair when the first kiss happened and no one was around, but she did not indicate where she was in the house.  The prosecutor asked about the kiss in the kitchen.  Lisa C. initially testified Castro kissed her on the mouth but did not use his tongue.

The prosecutor then asked, "Did [Castro] ever place his tongue inside your mouth during your first stay here in the United States?"  Lisa C. said she did not remember.  The prosecutor responded, "Do you remember testifying during the preliminary hearing and you indicated to the court that the defendant did insert his tongue inside your mouth?"  Lisa C. replied, "Kind of," and, "I don't remember."  She then admitted she did not want to be in the courtroom testifying and it was "uncomfortable" for her.

The prosecutor read Lisa C. some of her testimony from the preliminary hearing, including her statements that Castro used his tongue during the kitchen and dining room kisses.  Lisa C. said she did not remember giving that testimony.

The prosecutor also asked if Lisa C. remembered speaking to the prosecutor and a detective earlier that week and telling them Castro inserted his tongue into her mouth three times during her 2013 visit.  She said yes.  She then changed her prior testimony and said one of those kisses took place in the kitchen.

On cross-examination, defense counsel questioned Lisa C. about her preliminary hearing testimony.  Lisa C. stated she remembered the kisses in the kitchen and dining room but did

7

not recall the details. She again changed her testimony regarding the kiss in the kitchen, testifying she did not remember whether Castro used his tongue during that kiss.

On re-direct, Lisa C. testified she remembered Castro kissing her with his tongue in the kitchen. However, she could not remember the location of the other tongue-kissing incidents, recalling only: "I do remember it was more than once." She testified the kisses in the living room and bathroom were "a peck."

Orellana subsequently testified over a defense objection that during the preliminary hearing, Lisa C. stated Castro kissed her three times during her 2013 visit. Lisa C. had also testified that Castro used his tongue twice, during the kitchen and living room kisses.

### B. The trial court did not abuse its discretion in admitting Orellana's testimony as to Lisa C.'s prior inconsistent statements

"A trial court's ruling on the admissibility of evidence, including 'on the hearsay nature of the evidence in question,' is reviewed for abuse of discretion." (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 766.)

" 'A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770.' [Citation.]" (*People v. Cowan* (2010) 50 Cal.4th 401, 462 (*Cowan*).) Under Evidence Code section 1235, "a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with [the witness's] testimony at the hearing and is offered in compliance with [Evidence Code] [s]ection 770." Under Evidence

8

Code section 770, "extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action." " 'The "fundamental requirement" of section 1235 is that the statement in fact be *inconsistent* with the witness's trial testimony.' [Citation.] ' "Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness'[s] prior statement . . . ." ' [Citation.]" (*Cowan*, *supra*, 50 Cal.4th at p. 462.)

Castro argues the Evidence Code section 1235 exception did not apply because, at most, Lisa C. could not recall the details of the kisses at trial. He thus contends Orellana's testimony recounting Lisa C.'s prior preliminary hearing testimony did not provide evidence of statements inconsistent with her trial testimony. We disagree.

A witness's claimed memory loss may constitute evasiveness that amounts to inconsistency under Evidence Code section 1235. (*Cowan*, *supra*, 50 Cal.4th at p. 463.) The trial court could reasonably conclude that was the case here. At trial, Lisa C. changed her testimony regarding whether Castro kissed her with his tongue, first saying he had not touched her at all, then admitting she previously said he kissed her with his tongue three times, and finally stating she could not remember how many times he kissed her with his tongue, but that it was more than once. Her testimony was also contradictory as to whether Castro kissed her with his tongue in the kitchen. When confronted with her preliminary hearing testimony in which she

9

described Castro inserting his tongue into her mouth, she claimed she did not remember giving that testimony. Lisa C. also testified that she did not want to get Castro in trouble and was uncomfortable testifying.

"The trial court had the opportunity to view [Lisa C.'s] demeanor and therefore was in the best position to assess the credibility of her claimed nonrecollection." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 78 (*Coffman and Marlow*).) The court could reasonably conclude Lisa C. was being deliberately evasive when she claimed to not remember where or how many times Castro kissed her with his tongue. (*People v. Homick* (2012) 55 Cal.4th 816, 859, citing *People v. Ledesma* (2006) 39 Cal.4th 641, 711 [evasiveness may be implied from the trial court's ruling].)[4] The court therefore did not abuse its discretion in admitting Orellana's testimony relating to Lisa C.'s prior testimony summarizing the details of the kisses.

We similarly reject Castro's constitutional claims. (*Coffman and Marlow, supra*, 34 Cal.4th at p. 78.) As an initial matter, at trial, defense counsel made only a hearsay objection to Orellana's challenged testimony. Generally, constitutional claims are forfeited if no objection is made in the trial court. (*People v. Partida* (2005) 37 Cal.4th 428, 436; *People v. Carter*

---

[4]    Although the parties do not discuss Evidence Code section 770, we additionally note that the provision's requirements were met here. The prosecutor specifically examined Lisa C. about her prior inconsistent statements. The prosecutor asked if she recalled her preliminary hearing testimony, allowing her to explain the discrepancy. (*People v. Alexander* (2010) 49 Cal.4th 846, 908; *People v. Brown* (1995) 35 Cal.App.4th 1585, 1596–1597 (*Brown*).)

(2003) 30 Cal.4th 1166, 1196, fn. 6.) However, even assuming these claims were preserved for our review, we would reject them.

There is no Sixth Amendment violation under the confrontation clause because Lisa C., the declarant of the out-of-court statements, appeared at trial for cross-examination. (*People v. Anderson* (2018) 5 Cal.5th 372, 404; *Brown, supra*, 35 Cal.App.4th at pp. 1596–1597.) The admission of the testimony likewise did not render the trial fundamentally unfair. The evidence was properly admitted under state law, Castro was free to confront it, and it was only a small part of the prosecution's case. (*Cowan, supra*, 50 Cal.4th at pp. 463–464.)

## C.    Any error was harmless

Moreover, even if the trial court erred in admitting Orellana's testimony, we would find any error was harmless. It is not reasonably probable that the admission of Orellana's challenged testimony affected the verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)[5]

Orellana testified that Lisa C. said Castro kissed her twice with his tongue in 2013, once in the kitchen, and once in the dining room. However, before Orellana's testimony was offered, Lisa C. had already testified and admitted she had previously

---

[5]    Contrary to Castro's assertion that the federal harmless error test under *Chapman v. California* (1967) 386 U.S. 18 should apply, our high court has repeatedly applied the *Watson* standard in reviewing error in the admission of a prior inconsistent statement under Evidence Code sections 1235 and 770. (*People v. Arias* (1996) 13 Cal.4th 92, 153 (*Arias*); *People v. Johnson* (1992) 3 Cal.4th 1183, 1220 (*Johnson*).) "This routine application of state evidentiary law does not implicate defendant's constitutional rights." (*People v. Brown* (2003) 31 Cal.4th 518, 545; *Coffman and Marlow, supra*, 34 Cal.4th at p. 76.)

said Castro kissed her three times with his tongue during the 2013 visit. She had also already testified on redirect that Castro kissed her with his tongue in the kitchen. Accordingly, after Lisa C.'s first denial, she admitted that Castro put his tongue in her mouth more than once, and, after changing her testimony several times, finally testified that one of those times was in the kitchen.

In addition, the prosecutor confronted Lisa C. directly with her preliminary hearing testimony and the defense did not object. Thus, even without Orellana's testimony, there was evidence that Castro kissed Lisa C. with his tongue more than once. Even if erroneously admitted, Orellana's testimony was a minor part of the prosecution's case that was merely cumulative of Lisa C.'s testimony. (*Arias*, *supra*, 13 Cal.4th at p. 153; *Johnson*, *supra*, 3 Cal.4th at p. 1220.) And, as discussed more fully below, there was overwhelming evidence of Castro's sexual intent in kissing Lisa C., irrespective of whether he used his tongue.

The admission of Orellana's testimony was not prejudicial error.

## II. Substantial Evidence Supported the Conviction for Lewd Act on a Child Under 14 Years Old as Charged in Count 1

Castro also argues that the evidence was insufficient to support his conviction for count 1. We disagree.

To determine whether the evidence is sufficient to sustain a criminal conviction, "we review the entire record in the light most favorable to the judgment of the trial court. We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt." (*People v. Vargas* (2020) 9

Cal.5th 793, 820.)  We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, and we accept logical inferences the jury might have drawn from circumstantial evidence.  (*People v. Baker* (2021) 10 Cal.5th 1044, 1103.)  We do not reverse unless it appears " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' [Citation.]" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)  We resolve conflicting inferences and credibility findings in favor of the verdict.  (*People v. Collins* (2021) 65 Cal.App.5th 333, 344.)

A violation of section 288, subdivision (a) "requires proof of the following elements: [¶] 1. The defendant willfully touched any part of a child's body . . . ; [¶] 2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; and [¶] 3. The child was younger than 14 years old at the time of the act." (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1160 (*Valenti*).)

In *People v. Martinez* (1995) 11 Cal.4th 434 (*Martinez*), our Supreme Court explained section 288 is "violated by 'any touching' of an underage child committed with the intent to sexually arouse either the defendant or the child."  (*Id*. at p. 442.) In determining that *any* type of touching was sufficient if sexually motivated, the court reasoned that "the statute was intended to include sexually motivated conduct not made criminal elsewhere in the scheme."  (*Id*. at p. 443.)  Thus, "a lewd or lascivious act" under section 288 "can involve 'any part' of the victim's body."  (*Id*. at p. 444.)  However, because children are "routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing," and "any of these intimate acts may also be undertaken for the purpose of sexual

arousal," whether the act falls under section 288 "depend[s] upon the actor's motivation," which is "inferred from all the circumstances." (*Id*. at p. 450.) Relevant circumstances include "the charged act," the defendant's "extrajudicial statements," "other acts of lewd conduct admitted or charged in the case," the "relationship of the parties," and any "coercion, bribery, or deceit used to obtain the victim's cooperation or to avoid detection." (*Id*. at p. 445.) "[S]exual gratification must be presently intended at the time" the touching occurs. (*Id*. at p. 444.)

Substantial evidence supported the jury's findings based on Castro kissing Lisa C. in November 2013. Lisa C. testified that Castro kissed her with his tongue. Castro admitted that he kissed her. Both also stated that they engaged in other romantic or sexually motivated activities, including holding hands and touching feet under the table. During his recorded police interview, Castro said the kisses and handholding took place when others were not around. The jury could infer that the deliberately clandestine nature of these displays of affection betrayed Castro's improper, sexual intent. (*In re Randy S.* (1999) 76 Cal.App.4th 400, 407 [touching in a "clandestine manner" to "keep nature of his activities hidden" is evidence of sexual intent].)

Castro also admitted he was attracted to Lisa C. in 2013. He looked at her breasts and buttocks and described his disbelief that she was only 13, given her appearance. Lisa C. testified she "maybe . . . loved him" and felt for him the way a girl would feel for a boy. Castro also explained he felt Lisa C. looked at him as if she "liked" him, the way a "girl looks at . . . a man." Castro's statements acknowledged his awareness of Lisa C.'s romantic feelings for him. He said Lisa C. asked him to kiss her and,

14

although he "knew the consequences" of kissing her, he did it anyway since she was returning to Guatemala. He admitted being tempted to not only touch Lisa C.'s breasts but to do more. Indeed, he connected his feelings about Lisa C. and his actions to his lack of intimacy with his wife. Castro further acknowledged the inappropriate and unchaste nature of what had occurred. Substantial evidence supported the jury's finding that Castro kissed Lisa C. with "the intent to sexually arouse [himself] or the child." (*Martinez*, *supra*, 11 Cal.4th at pp. 442, 450 [intent inferred from all circumstances, including defendant's extrajudicial statements and admission of other acts of touching].)

Castro argues the evidence was insufficient because, at trial, Lisa C. testified that the 2013 kisses were a "peck" on the mouth, Castro's statements were "consistent with" Lisa C.'s testimony, and there was no evidence that Castro "attempted to open [Lisa C.'s] mouth or that the kisses were of significant duration." He also argues that he "never touched Lisa's breasts and buttocks in 2013. All they did was kiss, without using his tongue, play footsy under the table, and touch hands. He does remember that she grabbed his hand and put it on her chest."

This argument ignores the evidence that, even though Lisa C.'s testimony varied about the details of the kissing, she testified without objection that Castro inserted his tongue into her mouth on more than one occasion. The jury was free to accept Lisa C.'s testimony and to reject Castro's denial of any tongue kissing. (*In re R.C.* (2011) 196 Cal.App.4th 741, 750–751 ["[T]here can be no innocent or lovingly affectionate tongue kissing of a child by an adult"].)

15

Further, irrespective of whether Castro used his tongue, the other evidence was overwhelming that Castro's intent in kissing Lisa C. was sexual during at least one of the kisses. " '*Any* touching of a child under the age of 14 violates this section, even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' [Citation.]" (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) Castro's assertion on appeal that the kisses were like those between close friends or family members of "nonsexual affection" are belied by his admission of sexual or romantic feelings for Lisa C., his other sexually motivated touching of Lisa C. in 2013, and his acknowledgment that at least one kiss he described was inappropriate. (*Martinez*, *supra*, 11 Cal.4th at p. 445 [intent may be determined from defendant's statements and "other acts of lewd conduct admitted"]; *Valenti*, *supra*, 243 Cal.App.4th at p. 1161 [jury could infer that hugs were given with sexual intent based on defendant's other conduct with the victims and defendant's pattern of "courtship" conduct].)

Substantial evidence supported Castro's conviction.

**DISPOSITION**

The trial court judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.