Filed 11/7/24  In re April A. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re APRIL A. et al., Persons Coming Under the Juvenile Court Law. | B335090 <br><br> (Los Angeles County Super. Ct. No. 23CCJP02586) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALEXANDER A., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this dependency appeal, father challenges the sufficiency of the evidence supporting jurisdiction over and removal of his six-year-old daughter from his custody. Because we conclude the evidence is sufficient to support the juvenile court's findings, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The family*

Kenia N. (mother) and Alexander A. (father) have a daughter, April A. (born April 2017). Mother and father are not together; pursuant to a family court order granting the parents joint legal and physical custody, April split her time equally between mother's and father's homes.

#### B. *The sexual abuse*

Father inappropriately touched and exposed himself to April while she was in his care. Once, after April finished using the restroom, father touched her vagina over her underpants, and said, "cool man." He then left the room, but returned to touch her vagina again, this time over her pants. Another time, after father finished using the restroom, he approached April with his underpants around his knees and, while facing her with his penis exposed, inserted one of April's troll doll toys "inside his butt."

2

When April did not look up from the tablet she was using, father took the tablet away, turned around for her to see the troll doll in his buttocks, and encouraged her to place a toy in hers. When April said she was going to report these incidents to mother, father told her not to.

In July 2023, mother observed April placing a toy near her underpants. When she asked April to explain her conduct, and ensured April she would not be mad if April told her, April disclosed, "My dad touch my private part once I was done peeing and put a troll toy between his buttocks." Mother reported this to April's primary care physician at a doctor's appointment the following day. At the physician's recommendation, mother took April to the emergency department, where April repeated the allegations to hospital staff, a responding police officer, and a social worker. She later repeated the allegations to a forensic interviewer and dependency investigator.

Later that month, April disclosed additional abuse. She told mother about an incident where father "told her to lay on her back with her legs spread open and [then he] touched her vagina." She also told mother and the forensic interviewer that father had her massage his back with lotion while he was naked, in exchange for chocolate. April repeatedly stated that she did not feel safe in father's home and did not want to visit him.

Father denied sexually abusing April and claimed mother was fabricating the allegations and coaching April so that she could gain full custody. Mother had accused father of sexually abusing April in the past, and those claims were not substantiated.

## II. Procedural Background

### A. *Petition*

On August 4, 2023, the Los Angeles County Department of Child and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over April on the grounds that father "sexually abused" April by "fondl[ing] [her] vagina" and "exposing [his] buttocks and penis" to her, thus placing her "at risk of serious physical harm, damage, [and] danger" (and rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivisions (b)(1) and (d)).[1]  At an August 18, 2023 detention hearing, the juvenile court detained April from father.

### B. *Jurisdictional and dispositional hearing*

The juvenile court held a combined jurisdictional and dispositional hearing on January 31, 2024.  Following argument, the court amended the allegations to conform to proof—namely, the court revised the allegation that father "sexually abused" April by "fond[ling] [her] vagina" to read that father "sexually abused" April by "inappropriately touch[ing] [her] vagina."  The court then sustained the allegations of sexual abuse under section 300, subdivision (b)(1), but struck the allegation under subdivision (d), noting that the latter was not "necessary."

As to disposition, the court removed April from father's custody, granted father monitored visits for a minimum of two hours per week, and ordered father to participate in individual counseling, conjoint counseling as deemed appropriate by April's therapist, developmentally appropriate parenting classes, and sex abuse counseling for perpetrators.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

## C.    *Appeal*

Father timely filed this appeal.

## DISCUSSION

Father argues there is insufficient evidence to support the juvenile court's exertion of dependency jurisdiction over April and the juvenile court's removal of April from father's custody.  We disagree.

## I.    **Exertion of Dependency Jurisdiction**

Dependency jurisdiction is appropriate under section 300, subdivision (b)(1) where a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" due to a parent's "failure or inability . . . to adequately supervise or protect the child."  (§ 300, subd. (b)(1).)  We review a juvenile court's finding of dependency jurisdiction for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's findings—contains """sufficient facts to support""" the court's jurisdictional findings.  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

The record supports the juvenile court's jurisdictional findings.  April reported that father had inappropriately touched her vagina, exposed his genitals to her, made her watch him insert one of her toys into his buttocks, encouraged her to insert a toy into her buttocks, and bribed her to massage his naked body in exchange for chocolate.  Her statements constitute substantial evidence that these events happened, such that April was not adequately supervised or protected.  (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1101 ["The testimony of a single witness can provide substantial evidence"].)  These statements also establish that April remains at substantial risk of further harm because the conduct she reported amounts to "'a

5

fundamental betrayal of the appropriate relationship between the generations.'"  (*I.J.*, *supra*, 56 Cal.4th at p. 778.)

Father responds with what boils down to three arguments.

First, father argues the juvenile court's jurisdictional finding under subdivision (b)(1) of section 300 is undermined by (1) its modification of the count to reflect "inappropriate[] touch[ing]" rather than "fondl[ing]" (because only the latter constitutes "sexual abuse"), and (2) its simultaneous ruling declining to exert jurisdiction under subdivision (d) of section 300.  We reject this argument.  To begin with, "sexual abuse" is a prerequisite only to the exertion of jurisdiction under subdivision (d) of section 300, so the absence of "sexual abuse" would not affect the propriety of the court's otherwise appropriate exertion of jurisdiction under subdivision (b)(1) of section 300.  (Accord, *In re L.O.* (2021) 67 Cal.App.5th 227, 243-244 [noting that inadvertent exposure to sexual conduct, though not "sexual abuse" under subdivision (d), may nonetheless warrant jurisdiction under subdivision (b)(1)].)  Moreover, father's conduct qualifies as "sexual abuse" regardless of whether it is *characterized* as "fondling" or "inappropriate touching."  "Sexual abuse" for this purpose is defined to include "[t]he intentional touching of the genitals or intimate parts, including the . . . genital area [or] buttocks . . . of a child, . . . for purposes of sexual arousal or gratification."  (Pen. Code, § 11165.1, subd. (b)(4).)  Father's conduct in inappropriately touching April's vagina constitutes the touching of a child's genitals, and father's further conduct in exposing his penis to her and inserting one of her toys into his buttocks while admonishing April not to tell mother, certainly gives rise to the reasonable inference that he was acting intentionally when he touched April's vagina and that he did so

6

for the purpose of sexual arousal or gratification. (See *In re R.C.* (2011) 196 Cal.App.4th 741, 750 [sexual intent may be inferred from the circumstances, including "'any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection'"].) That the juvenile court elected not to hold father accountable for sexual abuse under *both* subdivision (d) and (b)(1) did not somehow negate the validity of its finding of "sexual abuse" or deprive it of jurisdiction under subdivision (b)(1), which, as noted above, does not *require* "sexual abuse" at all.

Second, father argues the juvenile court was obligated to reject April's account of events because the family court had previously found that he did not sexually abuse her. We need not deal with the legal validity of father's argument because it is unsupported by the record. Whether the family court rejected previous and unrelated reports of abuse is irrelevant to the truth of the allegations underlying the dependency petition in this case. And the only time the family court considered the allegations underlying the petition, the family court opted not to grant a temporary emergency order placing April in mother's custody—not because the allegations were unfounded, but because the Department was independently investigating the allegations *in this case.*

Third and finally, father argues that mother's prior unsubstantiated claims of sexual abuse, April's prior exposure to investigations and interviews about sexual abuse, and evidence suggesting mother may have coached April all undermine the juvenile court's jurisdictional findings. By this argument, father asks us to re-weigh the juvenile court's credibility call. This we cannot do. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)

## II. Removal

Once a juvenile court exerts dependency jurisdiction over a child, the court may remove the child from her parent if it finds, by clear and convincing evidence, that (1) "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home," and (2) "there are no reasonable means" short of removal "by which the [child]'s physical health can be protected." (§ 361, subd. (c)(1); Cal. Rules of Court, rule 5.695(c)(1).) We review a removal order for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Substantial evidence supports the juvenile court's removal findings. Father's inappropriate conduct traumatized April (not, as father asserts, the Department's lack of cooperation with the court's visitation orders). She reported feeling unsafe in father's home, did not want to visit with him even with a monitor, and experienced nightmares and bedwetting in response to merely discussing visitation in therapy. On this record, a reasonable factfinder could conclude, as the juvenile court did, that returning April to father's care would be detrimental to her wellbeing. The risk of danger to April was only exacerbated by father's refusal to accept responsibility for his wrongdoing and his refusal to enroll in voluntary services. (See *In re N.M.* (2011) 197 Cal.App.4th 159, 170 [parent's denial of the abuse and minor's fear of returning home were evidence supporting removal].)

Citing *In re John W.* (1996) 41 Cal.App.4th 961, father argues that this dependency matter is little more than an unwarranted extension of the parents' family court "custody dispute." To be sure, "'the juvenile courts must not become a battleground by which family law war is waged by other means,'

particularly when 'the resources of local government social services agencies are stretched thin.'" (*In re Nicholas E.* (2015) 236 Cal.App.4th 458, 466.)  But where, as here, dependency jurisdiction is warranted and removal is necessary to protect the child, "these concerns must give way to the primacy of dependency court jurisdiction and its special role."  (*Ibid.*)  Because substantial evidence supports the juvenile court's finding that removal was necessary to protect April's wellbeing, mother and father's contentious relationship and prior custody disputes are irrelevant.

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST